HOPKINS v. MICHIGAN SUGAR CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION—ACCIDENT ARISING OUT OF EMPLOYMENT.
   To justify an award of compensation to an injured employee the accident must have arisen out of as well as in the course of his employment; the two are separate questions to be determined by different tests: "out of" points to the cause or source of the accident, while "in the course of" relates to time, place, and circumstance.

2. SAME—RELATION OF SERVANT—INJURIES OUTSIDE OF EMPLOY-
   MENT.

> Where the decedent was in the employ of the defendant
> as its chief engineer, and had supervision of the installa-
> tion of machinery in several of defendant's plants at
> different cities, an injury received while he was prepar-
> ing to board a car in the street by slipping and falling
> upon icy ground in a city in which his principal office
> and the main plant of his employer was situated, was
> not an injury which arose out of his employment under
> Act No. 10, Extra Session 1912 (2 How. Stat. [2d Ed.]
> § 3939 *et seq.*), although decedent had spent the day at
> one of the branch factories in a distant town from which
> he had returned to the city in which he resided.

Certiorari to the Industrial Accident Board. Sub-
mitted November 11, 1914. (Docket No. 25.) De-
cided January 4, 1915.

Jane E. Hopkins presented a claim against the
Michigan Sugar Company for compensation for the
death of her husband. An order granting compensa-
tion is reviewed by contestant on certiorari. Re-
versed.

*Brooks & Cook* (*Hal H. Smith,* of counsel), for
claimant.

*Frank J. Riggs* (*Martin J. Cavanaugh,* of counsel),
for defendants.

STEERE, J. The proceedings in this case, brought
here for review by certiorari, arose under Act No.
10, Pub. Acts 1912 (Extra Session) ; (2 How. Stat.
[2d Ed.] § 3939 *et seq.*), and involve the validity of
an award, by the State Industrial Accident Board, of
compensation to claimant for the death of her hus-
band on February 13, 1913, against his employer, the
Michigan Sugar Company, defendant.

It appears from the finding of the board, supported
by competent evidence, that deceased was in the em-
ploy of said company as its chief engineer, supervising

the installation of machinery in, and operation of, six of its plants located at Saginaw, Bay City, Alma, Croswell, Caro, and Sebewaing. He resided at Saginaw, had a desk at the office of the company in that city, and did work there from time to time, but had no regular office hours, and was engaged much of his time visiting and looking after the different factories, as directed or as circumstances might require. He received an annual salary, with his traveling expenses paid when going on business of his employer. He sometimes started from the office and at other times from his home when making such trips. On February 4, 1913, he left Saginaw in the morning for Sebewaing, to visit the company's plant at that place. A train arrived at Saginaw from Sebewaing at 5:40 p. m. About 6:40 he arrived home with an injury to his head, which was bleeding a little at the back, and which his wife cared for. He detailed to her, and subsequently to others, how it occurred. No one is shown to have seen the accident. He spent most of the following day at the office, and the day after attended a funeral in Bay City. During those two days he appeared unwell, complained of a severe headache, and in speaking of it told of the accident to which he attributed it. From that time he grew worse, suffered a partial paralysis, with other symptoms of brain pressure, and died on February 13th. Without details, the testimony of physicians showed that his death was caused by a hemorrhage resulting from a small fracture about one-half inch long extending from the vertex of the skull toward the right ear.

It is claimed and found by the board that upon arriving at the station in Saginaw, upon his return in the evening from Sebewaing, deceased found no street car in sight and started to walk along Washington street in the direction of both his home and

the company's office; that after he had walked a number of blocks he saw a street car coming and started from the sidewalk, intending to take it; that the ground there was icy and covered with snow, and he slipped and fell, receiving the injury which eventually resulted fatally. Material parts of this finding are challenged as unsupported by any competent evidence; no witness being shown to have seen the accident. Much clearly incompetent and purely hearsay evidence produced by claimant was admitted in regard to it, some of which showed that deceased ran to catch the car and did not notice the ice until, in hurrying over it, he slipped and fell.

Conceding, however, as contended by claimant, that facts and circumstances properly proven, together with the report of accident made by the defendant company to the Industrial Accident Board, as required by statute, furnish sufficient evidential support for the findings, and accepting them as true, we are yet impelled, under the authorities, to the view that such findings fail to sustain the conclusion of law by the board that such accident was naturally or peculiarly incidental to and arose out of deceased's employment.

To justify an award under this act, it must be shown that the employee received "a personal injury arising out of and in the course of his employment." This provision is adopted in identical words from the English workmen's compensation act, and presumably with the meaning previously given it there.

It is well settled that, to justify an award, the accident must have arisen "out of" as well as "in the course of" the employment, and the two are separate questions to be determined by different tests, for cases often arise where both requirements are not satisfied. An employee may suffer an accident while engaged at his work or in the course of his employment which

in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it. An accident arising out of an employment almost necessarily occurs in the course of it, but the converse does not follow. 1 Bradbury on Workmen's Compensation, p. 398. "Out of" points to the cause or source of the accident, while "in the course of" relates to time, place, and circumstances. *Fitzgerald* v. *Clarke & Son*, 2 K. B. (1908) p. 796.

The same provision, in the same words, is found in the Massachusetts workmen's compensation act. In *McNicol's Case*, 215 Mass. 497 (102 N. E. 697), the controlling question was whether fatal injuries received by an employee through blows and kicks administered by a fellow workman, "in an intoxicated and frenzied passion," arose out of the employment. It appearing that the assaulting fellow-servant, with whom deceased was required to work, was, when in liquor, known to be quarrelsome and dangerous, and unsafe to be permitted to work with his fellow-employees, the court held that "a natural result of the employment of a peaceable workman in company with a choleric drunkard might have been found to be an attack by the latter upon his companion;" but if the assaulter had not been an employee, though the injury would yet have been received in the course of the employment, it could not have been said to have arisen out of it. *Mitchinson* v. *Day Bros.*, Workmen's Compensation Reports (1913), p. 324. In that connection, recognizing as controlling authority, and differentiating, many cited English cases upon the subject, the court thus clearly and comprehensively states the rule:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment when

there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed, apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

The question of whether deceased was in any sense within the ambit of his employment at the time and place of the accident is a serious one; but, conceding that the injury befell him while in the course of his employment, can it be fairly traced to his employment as a contributing, proximate cause, or did it come from a hazard to which he, in common with others, would have been equally exposed apart from the employment? No direct causal relation is claimed in the particular that the nature of the business of manufacturing sugar in itself exposes its employees to unusual risk or danger of accident of this nature. All that can be claimed is that the accident resulted from the understood extra hazard to which those who travel are exposed, and, while traveling in his employer's business, he was protected against accidents attributable to that extra danger.

Deceased's home and headquarters were in Sagi-

naw. He had a desk in the office of the company, where he did some work. One of the six factories he supervised was in Saginaw. His traveling consisted of journeying to the other five factories from time to time as occasion required. On the day in question he had made such a journey to Sebewaing and returned to Saginaw in safety. At the time of the accident he was in his home city, walking along the street, exposed to no more or different hazards of travel than any other citizen, nor than he would have been had he spent the day at the company's office or its Saginaw plant. How is the legal aspect of the case affected by his having gone to Sebewaing during that day, when it appears that his duties of the day were ended and he had returned safely to Saginaw? At the time of his accident he was passing on foot along a familiar highway, upon which was ice and snow—a natural condition of that season of the year—involving an increased risk and added danger of falling, common to all and known to all. When he slipped upon the snow-covered ice and fell, he was not riding upon nor getting on or off any conveyance, public or private. No person or thing connected with transportation or travel touched or threatened him. While it is indicated by the record that he desired to take a street car and was walking or running towards one for that purpose, to assert that he was injured in attempting to take or board a car would be a misleading overstatement. He slipped and fell before reaching it, apparently such a distance away as not to attract the attention of those on the car, as no witnesses to the accident were produced. The board found that "he started from the sidewalk towards the car with the intention of boarding the same;" and the employer's report, which is the legal basis of such finding, shows that he fell "about one-third distance between sidewalk and car track." The car was presumably

somewhere on the track at the time, but just where is not disclosed.

Slipping upon snow-covered ice and falling while walking, or running, is not even what is known as peculiarly a "street risk;" neither is it a recognized extra hazard of travel or particularly incidental to the employment of those who are called upon to make journeys between towns on business missions.

These distinctions are recognized and the rule correctly stated in an opinion of the Michigan Industrial Accident Board, filed in *Worden* v. *Commonwealth Power Co.*, 20 Det. Leg. News, No. 39 (December 27, 1913), as follows:

"It must also appear that the injury arose out of the employment and was a risk reasonably incident to such employment, as distinguished from risks to which the general public is exposed.    To illustrate: * * *   On the other hand, it might be fairly said that one of the most common risks to which the general public is exposed is that of slipping and falling upon ice.   This risk is encountered by people generally irrespective of employment.   *   *   * "

The board also referred to the fact that claimant was upon his own premises, as of some force, but apparently denied an award upon the ground quoted, which is well supported by former decisions.

In the late case of *Sheldon* v. *Needham*, W. C. & Ins. Rep. of 1914, p. 274, a servant sent to mail a letter slipped in the street, upon a banana peel or some other slippery object, breaking her leg.   Citing as controlling several cases involving the same principle, the court held that, although claimant was in performance of the exact thing ordered done, there could be no award because the accident was not due to any special or extra risk connected with and incidental to her employment, but was of such nature as to be equally liable to happen under like circumstances to any one in any employment, and whether employed

or not.  This unfortunate accident resulted from a risk common to all, and which arose from no special exposure to dangers of the road from travel and traffic upon it; it was not a hazard peculiarly incidental to or connected with deceased's employment, and therefore is not shown to have a causal connection with it, or to have arisen out of it.

For the foregoing reasons, we are impelled to the conclusion that the order and award of the Industrial Accident Board in the premises cannot be sustained.

Reversed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.