MARY E. GRIFFITH, Appellee, v. COLE BROTHERS et al.,
Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Juris-
diction of Court to Review Decision of Industrial Commissioner.
The jurisdiction of the district court to enter a decree *"in ac-
cordance"* with the order or decision of the Industrial Commis-

sioner respecting claims for compensation under the Workmen's Compensation Act, upon due filing with said court of said order or decision and "all papers in connection therewith," is not limited to the formal, ministerial, and perfunctory act of recasting said order or decision into the form of a court decree, but embraces the power to determine:

(1) Whether the servant was, as a proper conclusion of law *upon said certified transcript and findings,* "in the course of his employment" at time of injury.

(2) Whether the injury, as a proper conclusion of law *upon said certified transcript and findings,* "arose out of the servant's employment."

(3) If both queries be answered in the affirmative, *to apply the compensation schedules and enter a decree accordingly.* (Sec. 2477-m33, Code Supp., 1913.)

**STATUTES:** Construction—Avoiding Invalidating Construction.
2 Principle again recognized that, of two possible constructions of a statute, that one will be approved which will least imperil the constitutionality of the statute.

**MASTER AND SERVANT:** Workmen's Compensation Act—Injuries in ''Course of Employment.'' An employee engaged in continuous employment for the master is *"in the course of his employment"* so long as he is in the *sphere* of his employment, even though at the time of injury he is not directly performing any part of his daily task.

PRINCIPLE APPLIED: Deceased, under apparently regular and continuous employment by a bridge contractor, was, at the close of the day's work on the bridge, and preparatory to retiring for the night, sitting in a tent specially furnished by the employer for the housing of his men, and situated near the bridge under construction. The tent was on ground saturated with water, had no floor, was without lightning arresters of any kind, was higher than surrounding objects, was adjacent to a wire fence and a pile of steel rods, and had a small wire clothes line stretched inside and below the ridgepole. Lightning struck the tent and killed deceased. There was evidence that metal and wet ground were conductors of electricity; that wire fences increased the hazard from electricity; and that lightning arresters were, in a measure, successful in guarding against electricity. Whether the lightning came into the tent from the wire fence, from the pile of steel rods, or straight from the sky above, does not appear.

*Held*:

(1) The deceased was *"in the course of his employment"* at the time of the injury; but

(2) The injury did not *"arise out of the employment."*

**MASTER AND SERVANT:** Workmen's Compensation Act—Injuries "Arising Out of Employment"—Bolt of Lightning. An injury does not *"arise out of an employment,"* within the meaning of the Workmen's Compensation Act, unless claimant establishes, by a preponderance of evidence, that the injury is reasonably traceable to the *nature of the work done,*—that a causal connection exists between the conditions under which the work is required to be performed and the said resulting injury.

PRINCIPLE APPLIED:   See No. 3.

**MASTER AND SERVANT:** Workmen's Compensation Act—Remedy for Non-Industrial Accidents. Non-industrial accidents to one who happens to be an employee of the one negligently inflicting the injury are remediable under the general law of negligence—not under the Workmen's Compensation Act.

**NEGLIGENCE:** Failure to Erect Lightning Rods on Tent. No imputation of negligence may be drawn from the failure of a master to erect lightning rods over an ordinary lodging tent furnished by him for the use of his employees.

PRINCIPLE APPLIED:   See No. 3.

*Appeal from Story District Court.*—E. M. McCall, Judge.

DECEMBER 18, 1917.

REHEARING DENIED APRIL 4, 1918.

THE Workmen's Compensation Act provides that, when the action of the tribunals created by the act are certified to the district court, it "shall render decree in accordance therewith." The order certified in this case found that the employer was under no liability for the death of the employee, caused by a stroke of lightning. The district court took a contrary view, and gave the claimant a judgment for $3,000. The employer appeals.—*Reversed.*

*Miller & Wallingford,* for appellants.

*C. G. Lee, I. R. Meltzer, T. G. Garfield,* and *C. W. Garfield,* for appellee.

Salinger, J.—I.   The statute (Section 34, Chapter 147, Acts of the Thirty-fifth General Assembly) provides that:

"Any party in interest may present certified copy of an order or decision of the commissioner or a decision of an arbitration committee from which no claim for review has been filed * * * or a memorandum of agreement approved by the commissioner, and all papers in connection therewith, to the district court * * * whereupon said court shall render a decree in accordance therewith."

**1. Master and Servant: Workmen's Compensation Act: jurisdiction of court to review decision of industrial commissioner.**

The position of appellants is that the district court had no power to do what it did, because the words "in accordance therewith" refer to the order or decision, and nothing else, and that the formulation of decree cannot be affected by the words "all papers in connection with same:" in fewer words, that the district court is bound by the final conclusion reached, and cannot consider the record upon which the conclusion certified rests.   Appellants insist this contention is sustained because it was said, in *Fischer v. Priebe*, 178 Iowa 512:

"It was not within the authority of the court to review or reverse or modify the award.   Its function in the matter was simply to receive the award certified to it and 'render a decree in accordance therewith and notify the parties.'   This is what seems to have been done, and we find no error therein."

That this is purely *arguendo*, is not necessary to decision, and does not *decide* what appellant claims, is made manifest by consideration of the situation to which these words were addressed.   The complaint was that the district court had made an allowance which the commissioner had not made.   We held that the commissioner did make such allowance, that it is not objected to, and, in effect, that insufficient objection is made to whatever the

district court did do.   It is manifest that, when we found
the court had made no original allowance, it became utterly
unnecessary to determine whether it had power to make
one.

The *Fischer* case makes no reference to *Hunter v. Colfax Cons. Coal Co.*, 175 Iowa 245, and indeed, refers to no
decision.   In the *Hunter* case, at 308, we deal with an express objection that the act works "an improper delegation
of judicial power, and a denial of judicial hearing; that the
courts are compelled to enter judgment upon the award
without further hearing; that there is no provision for appeal from the judgment on the award except the limited
one permitted by the act; that the judgment must be modified by the court, if modified by the commissioner, and that
this works a denial of and taking property without due
process of law."   It is self-evident that to pass upon this
objection made it necessary to determine whether the powers given, or the limitations put upon, the district court
made the statute vulnerable to these objections.   Of course,
this could not be determined without bindingly passing
upon what these powers and limitations are.   We found
them to be of such character as that the objections were
not well taken.

We hold, first, there is no ouster of the courts where
the act is rejected, and then proceed to say:

"A somewhat more difficult question arises when the
provisions of the act are accepted.   In that case, if the
parties cannot come to an agreement, compensation fixed
by statute schedule is awarded by arbitration provided for
in the act.   In a sense, then, the acceptance of the statute
operates to take from the courts so much of the controversy as is determined by the applying of the statute schedules through the agency of the statute arbitrators.   Before
we reach the question whether, if this constitute a total
ouster of the jurisdiction of the courts, it would invalidate

the act, we of course have to determine whether such total ouster is so effected. We are forced to deal with this question as one of first impression, because no decision that sustains the Compensation Act of other states is applicable. The Washington Act and that of Massachusetts reserve recourse to the courts and full judicial review. In *Sabre's* case (Vt.), 85 Atl. 694, 695, a delegation is sustained because, in the end, the matter may get to the Supreme Court and have full review. *Borgnis v. Falk Co.,* (Wis.) 133 N. W. 209, sustains the Wisconsin act, with a holding that there is review if the act be without power, or fraudulent; that, if the board act without or in excess of its jurisdiction, there may be action in court to set aside the award, and that this may also be done if its findings of fact are not supported by the evidence. Our act has no such reservations, in terms, and, therefore, these decisions afford us no light." (314, 315).

In determining that there is not a total ouster of the courts, and that, therefore, the act is valid, we group certain things as being jurisdictional,—things upon which the power of the statute tribunals to act at all hinges. On this head, we said:

"The very basis of power to award compensation under the act is that its provisions must first be accepted; that the claimant must be an employe; that he must have sustained personal injuries; that they must have arisen out of and in course of the employment; and that the compensation shall be at rates fixed by the statute." (317)

We point out that *Sabre v. Rutland R. Co.,* 86 Vt. 347 (85 Atl. 693), holds that, as the Constitution provides courts shall be open for trial of all cases proper and cognizable, therefore, the courts, regardless of statute, may determine whether the board created has gone beyond the powers granted it. And we add:

"We are in no doubt that the very structure of the law

of the land and the inherent power of the courts would enable them to interfere, if what we have defined to be the jurisdiction conferred upon the arbitration committee were by it exceeded; that they could inquire whether the act was being enforced against one who had rejected it, whether the claiming employe was an employe, whether he was injured at all, whether his injury was one arising out of such employment, * * * or, acceptance (of the act) being conceded, * * * into whether that body attempt-. ed judicial functions in violation of, or not granted by, the act."

We sustain the act for being in analogy with the rule that makes contracts lawful which provide that the value of certain property and other like matters shall be determined by a certain person therein named, and that his decision shall be final, and say that such contracts are usually upheld as lawful because "they do not oust the courts of their jurisdiction over the subject matter, but only provide a safe and speedy manner of fixing definitely some fact which is usually of a complex and difficult nature," and because, when such fact is determined in the manner provided by the contract, "the parties are at liberty, after so fixing such fact, to go into court and litigate such differences as may still exist between them" (315, 316). We say that, "so far as specific delegation goes, the arbitration committee can do no more than to find that the employe should have compensation under some item of the statute schedule, and the commissioner may, on investigation, make a finding that an award thus made shall be modified or terminated. It is manifest that this does not in terms deprive the courts of all jurisdiction in the premises;" that there are "provisions that indicate it is not intended, literally at least, to give the statutory arbitrators all the powers that courts have" (317),—and, in commenting upon the appeal allowed, we hold that, "though the act does not

in terms provide for judicial review except by said appeal, the statute does not take from the courts all jurisdiction in the premises." We conclude thus:

"All of which establishes that the statute works no complete ouster of jurisdiction. * * * The utmost it does is to provide administrative machinery for applying rates of compensation fixed by the legislature, as between parties who have agreed to have the amount of compensation, merely, thus determined. The effect of statutes never challenged, so far as we are advised, which limit recovery for negligence causing death, is to compel the courts to do what here is done by the arbitrators." (318, 319)

In *Des Moines Union R. Co. v. Funk,* decided January 27, 1919, it is recognized that certiorari will lie "where the objection made is clearly one of jurisdictional nature, and it satisfactorily appears that the proceeding sought to be reviewed is wholly unauthorized," as a mere right of appeal in such case would not be a speedy or adequate remedy, within the meaning of the statute.

The Massachusetts Act (Acts & Resolves of Massachusetts, 1912, Ch. 571, Sec. 14) is on this point quite similar to our own. It provides that when "copies of * * * decision of the board * * * and all papers in connection therewith [have been transmitted] to the superior court, * * * said court shall render a decree in accordance therewith." Construing this act, it was, in effect, held, in *In re Employers' Liability Assurance Corp.,* 102 N. E. 697 (Mass.), that this means such decree as the law requires upon the facts found by the board, and does not reduce the action of the superior court to a mere perfunctory registration of approval of the conclusion of law reached by the board or commissioner, and that "the obligation placed upon the superior court by the requirement to enter a decree in accordance with the decision, is to exercise its judicial function by entering such decree as will enforce the legal

rights of the parties, as disclosed by the facts appearing on the record."

One may not read the *Hunter* case without being fully persuaded that we gravely doubted the constitutionality of the act, if it were open to the construction of appellant, and say that:

"Contracts by which the parties undertake to deprive themselves *in toto* of the right to resort to the courts to settle controversies between them in which are stipulated away all the rights of each or either to resort to the tribunals created by law, have been universally condemned. *Wood v. Humphrey,* 114 Mass. 185; *Pearl v. Harris,* 121 Mass. 390; *Barron v. Burnside,* 7 Sup. Ct. Rep. 931, 935." (313, 314).

Should we now hold that "in accordance therewith" means simply a formal approval of the conclusions of the commissioner, we would not only overrule the *Hunter* case, but go counter to the rule which requires that construction of the two which will the least imperil the validity of a statute. We would subject the statute to danger which the *Hunter* decision sought to avert. We should not construe the statute as appellant desires unless no other construction is in reason permissible. Our construction may interfere with the legislative purpose to provide a speedy method of obtaining compensation, rather than add to existing remedies. But if that be the result, it is still our duty to avoid any holding which will even gravely imperil the constitutionality of the statute. Some benefits may be lost by inability to effectuate the full purpose of the legislature. But better that than to lose all of the benefits of the statute. All possibility of this may be avoided by a perfectly permissible construction, to wit: The court may not go into a general fact controversy. It is limited to determining, upon the transcript and findings which the statute requires to be sent up, whether the committee or the

2. STATUTES: construction: avoiding invalidating construction.

commissioner had jurisdiction, and to effectuating what it finds upon that point. This is in analogy to cases like *Hatch v. Board of Supervisors,* 170 Iowa 82, which limit an inquiry of fact on certiorari to evidence addressed to whether the tribunal in review had jurisdiction, or, having it, exceeded it. Concretely, the court may investigate whether the commissioner has exceeded his jurisdiction. If that be found, it may set his award aside. If it finds the commissioner had jurisdiction, because an injury arose in course of and out of the employment, and the commissioner has refused to make an award, the court may remand, with direction that he allow what the statute provides; or, to avoid circuity of action, the court may effectuate its finding that the injury did so arise by itself allowing the statutory compensation, if it appear as matter of law what that compensation should be. It follows that the district court did not err in entering upon an inquiry whether the injury complained of arose as aforesaid, nor because it proceeded to fix the amount of compensation due, there being no complaint that it erred in determining the amount.

This leaves for our determination whether, on the merits, any recovery on part of the plaintiff is warranted.

II. One is in the "course of his employment" though he has not yet actually entered upon his task (Note to 3 N. C. C. A., at 270); while returning to work (*In re Heitz v. Ruppert,* 218 N. Y. 148 [112 N. E. 750]); while going to meals (*Martin v. Lovibund & Sons,* 5 N. C. C. A. 985, 988, *Sundine's* case, 218 Mass. 1 [105 N. E. 433], *Rowland v. Wright,* Note to 3 N. C. C. A. 278); while on way to cook his meals (*Morris v. Lambeth,* 22 Times Law Rep. 22, Note to Ann. Cas. 1913C, p. 20); while eating his meals (*Brice v. Lloyd,* 2 B. W. C. C. 26, *Blovelt v. Sawyer,* 3 N. C. C. A. 277); where he leaves his work and is on the roof for the purpose of taking fresh air (*Von*

3. MASTER AND SERVANT: Workmen's Compensation Act: injuries in "course of employment."

Ette's case, 223 Mass. 56 [111 N. E. 696]) ; where, while delivering ice, he leaves his team while going toward a house for shelter (State v. District Court, 129 Minn. 502 [153 N. W. 119]) ; while he is going for his dinner pail after working hours (Taylor v. Bush & Sons, 5 Penne. [Del.] 378) ; while he is putting on his coat after his day's work (Helmke v. Thilmany, 107 Wis. 216) ; while on his way from work (Gane v. Norton Hill Colliery Co., 2 K. B. [1909] 539, Terlecki v. Strauss, 85 N. J. L. 454 [89 Atl. 1023], In re Shroeb, Ohio Ind. Com. No. 36817, In re Fahey, Opinions So. Dept. of Labor, 283, Stacy's case, 225 Mass. 174 [114 N. E. 206]) ; where he is returning, after working hours are done, to a sleeping room furnished by the employer (Doherty v. Employers' Liability Assur. Corporation, 1 Mass. W. C. C. 450). If the employment is continuous, injury has been held to arise out of the employment where the servant, after a day's work, was sitting writing a letter, in a car furnished him by the employer to sleep in (International & G. W. R. Co. v. Ryan, 82 Tex. 565). And so where a servant girl, residing in her employer's home, was suffocated while asleep in her bed, through a fire which broke out in the house (Chitty v. Nelson, 126 L. T. J. 172).

"The general rule in construing compensation laws is that the responsibility of the employer begins when his employee enters his premises to perform the services required of him, and terminates when the employee leaves such premises, provided that he does not loiter needlessly, or arrive at an unreasonable hour in advance of the beginning of his duties." Gordon v. Eby, 1 Cal. Indus. Acc. Commis. Dec. No. 1.

The test seems to be whether deceased, "though actually through with the work, was still within the sphere of the work" (Note to Hills v. Blair, 182 Mich. 20 [148 N. W. 243]) ; was doing what "a man so employed may reasonably do within a time during which he is employed, and at a

place where he may reasonably be during that time" (*Bryant v. Fissell*, 84 N. J. L. 72 [86 Atl. 458]).

There are some holdings that run counter to these,—say, for instance, *Mahoney v. Sterling Borax Co.*, 2 Calif. Ind. Com., 700. But, on the whole, we incline to think that this employee was injured while in the course of his employment. He was where he was hurt because he had been employed. While his day's work was done, yet he remained where it was his duty to be, in order to begin the next day's work. He remained all the time within the sphere that his employment had fixed. Thus far, we sustain the decision of the trial court.

III. But it does not suffice that he was injured while in the course of his employment. It must further appear that his injury arose out of such employment. The defendants were bridge builders, who had charge of construction of county bridges in Story County. Deceased was employed by them. Decedent and others in such employment were by defendants lodged and boarded on the ground where the work was done. On the night of the accident, the day's work had been finished, but the employees were in the boarding tent. They had got through washing the dishes, and were sitting there until it was time to go to bed. While thus engaged, the decedent came to his death from a stroke of lightning. Concede that he was in the course of his employment while thus in the tent awaiting his bedtime, or supervising other employees in getting ready for bed, and still there must be proof that the injury arose out of such employment. The burden is on the claimant. It is not discharged by creating an equipoise. It requires a preponderance. See *Eisentrager v. Great Northern R. Co.*, 178 Iowa 713; *Savage's* case, 222 Mass. 205 (110 N. E. 283).

4. MASTER AND SERVANT: Workmen's Compensation Act: "injuries arising out of employment:" bolt of lightning.

"The burden of furnishing evidence from which the in-

ference can be legitimately drawn that the death of an employe was caused by an accident arising out of and in the course of his employment rests upon the claimant." *Barnabus v. Bersham Colliery Co.*, 103 L. T. R. 513.

It must appear by a preponderance that there is some causative connection between the injury and something peculiar to the employment (*Jones v. United States Mut. Acc. Assn.*, 92 Iowa 652); that it resulted from some risk reasonably incident to the employment, because "out of" involves the idea that the injury is in some sense due to the employment (*Fitzgerald v. W. G. Clarke & Son*, 2 K. B. [1908] 796); a causative danger peculiar to the work, and not "common to the neighborhood," an injury fairly traceable to the employment as a contributing cause,—to some hazard other than one to which the workman would have been equally exposed though in a different employment (*McNicol's* case, 215 Mass. 497 [102 N. E. 697]); a hazard peculiar to the business which is "the immediate cause" of the injury (*Rodger v. Paisley School Board*, 1 Scots Law Times [1912], 271, and see *Robson, Eckford & Co. v. Blakey*, 5 B. W. C. C. 536); an injury due to something more than the normal risk to which all are subject, which, at the least, means that the employment necessarily accentuates the natural hazard attendant upon work done in the course of the employment (*State v. District Court*, 129 Minn. 502 [153 N. W. 119]).

The words "out of" involve the idea that the accident is in some sense due to the employment. *Barnabus v. Bersham Colliery Co.*, 103 L. T. R. 513; *Fitzgerald v. W. G. Clark & Son*, 2 K. B. (1908) 796. It is said in *Hopkins v. Michigan Sugar Co.*, 184 Mich. 87 (150 N. W. 325), "an employe may suffer an accident while engaged at his work, or in the course of his employment, which in no sense is attributable to the nature of or risks involved in such employment, and therefore cannot be said to arise out of it."

*McNicol's* case, 215 Mass. 497 (102 N. E. 697), wherein recovery for injury by lightning is denied. It is done because no causal relation or peculiar exposure appears, and it is said that, while the injury need not have been foreseen or expected, yet, "after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence;" and that there can be a recovery only "when there is apparent to the rational mind, upon consideration of áll the circumstances," there exists "a causal connection between the conditions under which the work is required to be performed and the resulting injury.   *   *   *   A causative danger peculiar to the work   *   *   *   incidental to the character of the business." While an accident arising out of an employment almost necessarily occurs in the course of it, the converse does not follow. *Hopkins v. Michigan Sugar Co.*, 184 Mich. 87 (150 N. W. 325). To be sure, the nature of the occupation may supply causative relation. In *State v. District Court of Rice County,* 135 Minn. 324 (159 N. W. 755, 756), such relation was held to exist where an employee was handling instrumentalities charged with electricity, and there were present· certain conditions—as, for example, a wet cement floor—which were quite conducive to the passage of the electric current, it further appearing that deceased must have been struck at the moment he came in contact with an electric wire or socket. But it is only as to some employments that this is so; and, as said in *Andrew v. Failsworth Industrial Society,* 2 K. B. (1904) 32, speaking generally, being struck by lightning does not arise out of an employment, because *prima facie* it is something which arises altogether outside of such employment, and is a risk incidental to a small class of employments only. Because this is so, it is held in *Klawinski v. Lake Shore & M. S. R. Co.*, 185 Mich. 643 (152 N. W. 213), that there may be no recovery where a railroad section man was killed by a

stroke of lightning, while in a barn in which he had taken refuge from a storm, at the direction of his foreman. In *Kelly v. Kerry County Council*, 1 B. W. C. C. 194, deceased was, during a heavy rain storm, working at a water table in the road with a shovel, freeing outlets and gullets from matter that tended to choke them, and, while so engaged, was killed by lightning. It was held this employment created no special or peculiar risk from lightning, though deceased was obliged to do this work while a thunder storm was raging; that he was exposed to no greater risk of being struck by lightning than if he had been working in a field or garden; and that "the antecedent probability that he would be struck by lightning seems to be no greater in this case than in the case of any other person who went to work that day within the area of the thunder storm." To the same effect is *Hoenig v. Industrial Commission*, 159 Wis. 646 (150 N. W. 996), where an employee was killed by lightning, while working at the water's edge.

In *Karemaker v. "Corsican,"* 4 B. W. C. C. 295, a seaman, while at work on his ship, had his hands frozen, from handling frozen ropes. It was held the injury did not arise out of the employment, because the frost bites were caused by the elements. *Warner v. Couchman*, 1 K. B. (1911) 351, is to the same general effect. It has frequently been held that many accidents may happen to a workman, in the course of his employment, for which his employer would be under no liability. For illustration, a servant engaged in a foundry yard, in the course of his employment, if struck by lightning and seriously maimed, would have no claim under Workmen's Compensation Acts. *Falconer v. London & G. E. & I. S. Co.*, 3 Courts of Sessions Cases (5th Series) 564. It is said in that case:

"It must, I think, have arisen 'out of' his employment, and in a more exact sense than that it occurred to him when

at or going about his own employment in or about the factory."

The most that may be said where, as here, an employee is injured while sitting in his boarding tent, preparatory to going to bed, is that, if he had not been employed, he would not have been present in the tent, and would not have been struck at the time he was. In the same sense, the fact that he was born establishes a causative connection. If he had never come into being, he could not have been struck by lightning. The same argument might be made for a claim against one who sold a carriage to one who was struck by lightning while riding in it. What was said in *Craske v. Wigan*, 2 B. W. C. C. 35, covers the situation:

"It is not enough for the applicant to say 'the accident would not have happened if I had not been engaged in this employment, or if I had not been in that particular place.' The applicant must go further, and must say, 'The accident arose because of something I was doing in the course of my employment, and because I was exposed by the nature of my employment to some peculiar danger.' "

In our opinion, the injury claimed for did not arise "out of" decedent's employment.

### 3-b

It is not intended to hold that injuries from lightning can in no case be due to an industrial employment. It has been rightly said that they can be. See *State v. District Court*, 129 Minn. 502 (153 N. W. 119). The vice in this decision seems to us to be that, while it recognizes there must be more than the normal risk from lightning to which all are subject, and that the employment must necessarily accentuate the natural hazard from lightning, this is not followed to its logical end, and a recovery for injury by lightning is allowed where there was no such accentuation or abnormal risk. All that is requisite is that the employment

be of such nature as that, in reason, the employee is more exposed to hazards from lightning than is one in some other employment. Cases that hold a given accident from lightning did not arise out of the course of the employment recognize that such injury may be related to the employment. See *Hoenig v. Industrial Commission*, 159 Wis. 646 (150 N. W. 996). And so of *Rodger v. Paisley School Board*, 1 Scots Law Times (1912) 271, wherein it is said:

"To be struck by lightning is a risk common to all and independent of employment, yet the circumstances of a particular employment might make the risk not the general risk, but a risk sufficiently exceptional to justify its being held that accident from such risk was an accident arising out of the employment."

And it has been rightly held that injury from lightning did arise out of the employment, where a telephone or telegraph operator was hurt by an electric shock received in the course of his work. *Atlantic Coast Line R. Co. v. Newton*, 118 Va. 222 (87 S. E. 618). And so where a workman on a high scaffolding was kept at work during a storm. *Andrew v. Failsworth Industrial Society*, 2 K. B. (1904) 32. But where the servant is riding a corn cultivator, and plowing corn, being struck by lightning is suffering from what is not peculiarly invited by the employment. A lineman who, while at his work, is bitten by a snake, will not be allowed to trace his injury to his employment, even though he would not have been bitten had he been elsewhere than where his employment called him. On the other hand, if he touch a live wire, or is struck by lightning while repairing or putting up a wire, he may well claim that his injury is peculiarly due to his employment.

As was said in *Kelly v. Kerry County Council*, 1 B. W. C. C. 194, there must be evidence that the servant was exposed to a greater risk of being struck by lightning than if he had been working in a field or garden. In *Robson*,

*Eckford & Co. v. Blakey,* 5 B. W. C. C. 536, it is well indicated what the natural range of inquiry is, and said:

"To what class of dangers does this man's employment expose him? * * * Suppose he is a collier, I may say his employment exposes him to the risk of having things falling upon him from the roof, to the danger of tumbling down a shaft, and so on. In short, there is a peculiar class of dangers which exist only for people who go down into mines."

It is further illustrated by employments which compel walking in the street, and remaining off the sidewalk, as to which it has been said that there is a peculiar exposure to hazard from moving vehicles. In one word, it all turns upon whether it may in reason be said that, as distinguished from being hurt while employed, the injury is due to the nature of the employment. As said, we do not deny that being struck by lightning may be reasonably traceable to the nature of the work done, but decide that that may not be done in this case.

2-c

And it might well happen, too, that no recovery could be had under the compensation statute, even though injury was due to the negligence of the master. The negligence that sets the statute in motion is one that 5. MASTER AND SERVANT: Workmen's Compensation Act: remedy for non-industrial accidents. involves a failure to discharge a duty which the employer, as such, owes to the employee, as such. If the master furnish a defective scaffold for those who are erecting his building, the statute will give compensation; but if he ride a vicious horse to the premises where his bricklayer is at work, and the horse escape and strike the employee while he is preparing to ascend with brick, the one who caused the injury will be held responsible, but not under the provisions of the statute.

It does not necessarily follow, from the fact that one

struck by lightning might recover upon an accident insurance policy, or otherwise recover for such injury, that, therefore, recovery may be had under the Compensation Act. The statute, Section 2477-m16, Code Supplement, 1913, seems to contemplate injuries arising out of an industrial employment—industrial accidents. It is a fair analysis of *Hills v. Blair*, 182 Mich. 20 (148 N. W. 243), and *Rayner v. Sligh Furn. Co.*, 180 Mich. 168 (146 N. W. 665), that recovery under compensation acts can only be had for what is, in its nature, an accident growing out of an industrial employment. And in a concurring opinion in *Falconer v. Ship Co.*, 3 Court of Session Cases (5 Series) 564, Lord Trayner said that many accidents may happen to a workman in the course of the employment for which the employer would incur no liability, "for example, a servant engaged in a foundry yard in the course of his employment, if struck by lightning and seriously maimed, would have no claim for compensation under the act." It is said in *Klawinski v. Lake Shore & M. S. R. Co.*, 185 Mich. 643 (152 N. W. 213) :

"There is no doubt that it was the legislative intent to compensate workmen for injury resulting from industrial accidents, and that such compensation is charged against the industry because it is responsible for the injury."

And in *Hoenig v. Industrial Commission*, 159 Wis. 646 (150 N. W. 996), that the law assumes "to provide compensation for industrial accidents only—those growing out of the employment and caused by the industry. * * * Those caused by the industry and chargeable to the industry, and does not apply to injury resulting from those forces of nature described in the common law as acts of God, such forces as are wholly uncontrollable by men."

2-d

The evidence shows that the tent was placed in a river

bottom; that, on the afternoon of the day on which decedent was injured, the ground about the tent was saturated with

water; that the tent had no floor, and was

6. Negligence: failure to erect lightning rods on tent.

wet and muddy that afternoon; that it had no lightning rods nor lightning arresters of any sort; that it was higher than the surrounding objects; that wire fences, which were part of the highway fence, were about the tent; that, just north of it, in close proximity to its guide ropes, there was a pile of steel rods, for use in re-enforcing concrete; and that the tent poles, besides being connected by the canvas comb or ridge of the tent, were further connected by a No. 12 wire, used for hanging dishcloths and other articles to dry, which wire stretched above the top of the table in the tent. It is testified that the phenomenon of lightning and danger therefrom may, in a certain degree, be guarded against; that occupants of steel or metal structures are immune from danger from lightning; that metal is a good conductor of electricity; that a wire fence increases lightning hazards in its immediate vicinity; and that wet earth is a conductor of electricity. Appellee uses these facts for the proposition that defendants may not defend with *vis major*, because that defense is available only where the act of the elements is the sole cause of injury, and is not available where the "act of God" is coupled with human negligence. And it is true there is a general rule that "act of God" is no defense unless what happens is due to natural causes which can neither be anticipated, guarded against, nor resisted, and which could not have been prevented by any human prudence. *City of McCook v. McAdams,* 76 Neb. 1 (106 N. W. 988); *Colt v. M'Mechen,* 6 Johns. (N. Y.) 160 (5 Am. Dec. 200); *Garrett v. Beers,* 97 Kan. 255 (155 Pac. 2). He contends that, in this case, this negligence is furnished by the fact that the defendants did not equip this tent with appliances which are accepted as preventatives of light-

ning, or as reducing the hazard therefrom. Before considering this position, it is first to be said that, throughout, the claimant had the burden of showing that the alleged negligence *was* the proximate cause of his injury. It will not suffice that it is equally probable or possible that such negligence caused the injury, and that it did not. There is no evidence that the wire fence, the failure to have lightning arresters, and the like, caused the injury, rather than a bolt of lightning that came directly from the clouds, and which would have struck where it did though the things complained of had not been present. Let us assume, for the sake of argument, that, abstractly speaking, it may be no defense to a claim under our Compensation Act that the employer used every care that a reasonable man would, and was not obliged to use super care. Be that as it may, when, even as to such a claim, it becomes necessary to assert that *vis major* is no defense, because of the concurring negligence of the master, there may be an inquiry into whether the master was as careful as reasonably prudent men are in like circumstances. We think that failure to rod this tent and the like, not to anticipate the possibilities of lightning therewith, and the existence of the wire fence and the like, constituted no such negligence as deprives defendants of the defense of *vis major*. They were bridge contractors, constructing and equipping a boarding tent, and not an electrical telegraph or telephone system or the like, as to which ordinary and reasonable prudence demands precautions against lightning. See *Atlantic Coast Line R. Co. v. Newton,* 118 Va. 222 (87 S. E. 618). They are not within the rule of *Sloan v. J. G. White Eng. Co.,* 105 S. C. 226 (89 S. E. 564), wherein the Supreme Court of South Carolina, by a divided vote, held that, where a servant is struck by lightning, which came into a power house wherein he was working, and over a negligently grounded wire, and the proper grounding was a matter peculiarly within the

knowledge of the master, that, if the latter pleaded *vis major,* he has the burden of showing that the injury arose from an act of God, without contribution thereto by the negligence of the employer. To the same effect is *Brown v. West Riverside Coal Co.,* 143 Iowa 662, 671; *Jackson v. Wisconsin Tel. Co.,* 88 Wis. 243 (60 N. W̄. 430); *Michaels v. New York Cent. R. Co.,* 30 N. Y. 564 (86 Am. Dec. 415, at 418); *Amend v. Lincoln & N. W. R. Co.,* 91 Neb. 1 (135 N. W. 235, 236). In *Hoenig v. Industrial Commission,* 159 Wis. 646 (150 N. W. 996), there was testimony tending to prove that the surroundings created a peculiar exposure to lightning. But it was held, upon the physical facts, that there was no special hazard, and that the claimant might not recover. The vast majority would never think of lightning, and appliances to insure safety from it, in putting up such a tent. As well hold that a livery man is liable because he permits a team and buggy to go out in a rain storm without putting lightning rods or some other device on the buggy. On the theory of appellant, why would not a farmer be liable because his hired man was killed by lightning while sleeping in the bedroom provided for him, because the farmer's house had not been rodded?

In our opinion, it was error to hold that here was an injury arising out of the employment. Wherefore, we are constrained to reverse.—*Reversed.*

GAYNOR, C. J., LADD, WEAVER, EVANS, PRESTON, and STEVENS, JJ., concur.