KLAWINSKI *v.* LAKE SHORE & MICHIGAN SOUTHERN
RAILWAY CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—COURSE
OF EMPLOYMENT—RAILROADS—PERSONAL INJURIES.

A section laborer upon a railroad who had taken refuge
in a barn during a storm was not entitled to compensa-
tion under the employer's liability law for his death
caused by a stroke of lightning which struck the barn:
the injury or accident did not arise out of or in the
course of his employment, nor was death by lightning
peculiar to the industry or occupation in which he was
engaged. Act No. 10, Extra Session 1912 (2 How. Stat.
[2d Ed.] § 3939).

Certiorari to the Industrial Accident Board. Sub-
mitted June 18, 1914. (Docket No. 114.) Decided
April 19, 1915.

Katherine M. Klawinski presented a claim against
the Lake Shore & Michigan Southern Railway Com-
pany for the death of her husband in defendant's em-
ploy. From an order awarding compensation re-
spondent brings certiorari. Reversed.

*Angell, Boynton, McMillan, Bodman & Turner,* for
appellant.

*W. Glenn Cowell,* for appellee.

MCALVAY, J. In its return to a writ of certiorari
in this cause the Industrial Accident Board certifies
as follows:

"That at the time of the injury for which compen-
sation was sought herein, to wit, on the 15th day of
May, 1913, respondent had accepted to become sub-
ject to the terms of Act No. 10, Pub. Acts 1912 (Spe-
cial Session), commonly known as the 'Workmen's
Compensation Law.' That on the 28th day of July,

1913, said Katherine Klawinski made application to the board of arbitration of a claim to compensation from respondent for the death of her husband, Frank Klawinski, on the 15th day of May, 1913, while in its employ. That a committee of arbitration was duly formed which, after hearing the parties, made an award that respondent pay to said applicant the sum of $5.24 per week for a period of 300 weeks. That thereafter an appeal was taken by respondent from such award to said board on the ground that deceased did not receive an injury arising out of and in the course of his employment. That on the 20th day of November, 1913, an order was made by said board, affirming the award of said committee. The facts involved in this cause appear in the agreed statement hereto attached. The board does certify that said statement of facts is correct."

The following is the stipulation adopted by respondent board as its finding of facts in the case:

"State of Michigan—Before the Industrial Accident Board.
"Katherine Klawinski, Applicant, v. Lake Shore & Michigan Southern Railway Company,
Respondent.

"It is hereby stipulated and agreed between the parties hereto by their respective attorneys that the facts out of which controversy in the above entitled cause arises and which it is desired may be made a part of the return to the writ of certiorari heretofore issued from the Supreme Court in this cause to said Industrial Accident Board, are as follows:

"Frank Klawinski, applicant's husband, was employed prior to and on the 15th day of May, 1913, by respondent as a section laborer. On said date he was working as a member of a section gang of six men on respondent's roadway near Bronson, Mich. During the afternoon of that day a violent wind and rain storm arose. The foreman of the gang said, 'Boys, we better get out of the storm.' There was a barn near by, where the section gang had been in the habit of taking refuge from storms. The assistant foreman said, 'Come and go to the barn.' The foreman directed one of the men, named Kolassa, to

go for the coats, and waited for him.  While he did
so, the rest of the gang, including Klawinski, went to
the barn, the foreman and Kolassa going to a nearby
tenant house.  While in the barn, and during said
storm, Klawinski was killed by a bolt of lightning.
During the time the men were in the barn no work
was performed.  At such time as they had previously
gone in this barn for shelter the men had been paid
for their time and were so paid on this occasion.  The
assistant foreman was subject to the authority of the
foreman and had charge of the men during his
absence.  It was in the presence of the foreman that
he said, 'Come and go to the barn.' "

The only contention in the case made by appellant
is that the death of Frank Klawinski, for which com-
pensation is asked by and was granted to his widow,
did not result from "a personal injury arising out of
and in the course of his employment," and within the
meaning of the workmen's compensation law, and
therefore the Industrial Accident Board erred in
affirming the award of the committee of arbitration.
The proposition is fundamental that a claimant is
entitled only to an award of compensation for "a per-
sonal injury arising out of and in the course of his
employment."  To determine whether the injury in
the instant case is within the meaning of the law and
arose "out of and in the course of his employment"
we must consider the nature and character of that
employment.  Decedent was employed at the time as
a section laborer, one of a section gang of six men,
working upon defendant's roadway at the usual and
ordinary work performed by railroad sectionmen, in
which it may be said, as a general proposition, there
is no use of or work performed in connection with
electrical machinery or appliances, nor any unusual
proximity to such machinery or appliances.  There is
no doubt that it was the legislative intent to compen-
sate workmen for injuries resulting from industrial
accidents, and that such compensation is charged

against the industry because it is responsible for the injury.

As far as the instant case is concerned the scope of the English statute may be considered identical with the Michigan workmen's compensation law. Several cases have been passed upon by the English courts arising under the English law where compensation was sought for injury by lightning and, except in cases where the employment necessarily placed the employee at the time of his injury in a position subjecting him to unusual risk from lightning, compensation has been denied.

In a case identical with the instant case, where a workman employed as a road laborer, picking stones and clearing out gutters along a highway, during a thunderstorm was killed by lightning, the court held that the accident causing death did not arise out of the workman's employment. The court said:

"I am unable to find any special or peculiar danger from lightning to which these men (deceased and his companion) were exposed from working on the road. No expert or other evidence was offered to me that their position on the road exposed them to any greater risk of being struck by lightning than if they had been working in a field or a garden or a factory. The antecedent probability that they would be struck by lightning was no greater in their case than it was in the case of any other person who was within the region over which the thunderstorm passed." *Kelly* v. *Kerry County Council*, 42 Ir. L. T. R. 23, 1 B. W. C. C. 194.

This question has been before the industrial commission of Wisconsin in the case of *Lindauer O'Connel Co.* v. *Hoenig*, where the widow of John Hoenig, who came to his death by a stroke of lightning while he was employed by the company at work on a dam in the Fox river, taking planks out of the water above the dam, filed a claim for compensation on account of his death. Among other things, the commission found as a fact that "at the time and place of the in-

jury to John Hoenig resulting in his death, deceased was not exposed to a hazard from lightning stroke peculiar to the injury [industry], or substantially differing from the hazard from lightning of any other out-of-door work," and, further, that his death "was not proximately caused by any accident within the meaning of the term as used in chapter 599, Laws of Wisconsin 1913." In a memorandum opinion filed in the case, the commission, among other things, said:

"Lightning stroke is not popularly spoken of as an accident where it comes from the action of the elements without the agency of man. When the agency [industry] through the agency of man combines with the elements and produces injury to the employee by lightning stroke, it may well be said that the injury grows out of the employment and is accidental. Such has been the decision of the English courts under the English compensation act. We are aware that the language of the English act differs from the language of our act, but if we accept the construction of the legislative committee which drew the act, then we find the meaning of the two acts in this respect identical. Clearly the industry may be and ought to be charged with the burden resulting from the hazards of the industry itself.  *  *  *  We have no desire to pass on the question of public policy. That function is wholly within the province of the legislature. We merely desire to correctly interpret the legislative intent. The legislative committee in its report says that 'compensation shall be paid when the injury grows out of the employee's employment—it makes no difference who is to blame; it is sufficient *that the industry caused the injury.*' So in the case of lightning stroke, if we can find as a fact that the injury grew out of the employment, or that the industry caused the injury, then undoubtedly compensation should be paid.

"Assuming the law to provide compensation for industrial accidents only—those growing out of the employment and caused by the industry—we must approach the consideration of each case of injury by lightning on the question of fact, Did the injury grow

out of the employment and did the industry cause the injury? The act provides for compensation for 'personal injuries accidentally sustained * * * where the injury is proximately caused by accident.' We are of the opinion that this language refers to industrial accidents; those caused by the industry and chargeable to the industry, and does not apply to injuries resulting from those forces of nature described in the common law as acts of God, such forces as are wholly uncontrolled by men."

The prayer for compensation was denied, and the case dismissed.

Our quotations from the foregoing opinion are made from a certified copy which was furnished the court by counsel for appellant, who stated that they were unable to find that the opinions of the industrial commission of Wisconsin were officially published.

It is our opinion that in the instant case claimant's husband did not come to his death as the result of "a personal injury arising out of and in the course of his employment," within the meaning of the workmen's compensation law. It is clear from the stipulated facts that this injury was in no way caused by or connected with his employment through any agency of man which combined with the elements to produce the injury; that plaintiff's decedent by reason of his employment was in no way exposed to injuries from lightning other than the community generally in that locality.

Under the stipulated facts in the case the Industrial Accident Board was in error in affirming the award of the committee of arbitration, and its decision and determination is hereby reversed and set aside.

Brooke, C. J., and Kuhn, Stone, Ostrander, Bird, Moore, and Steere, JJ., concurred.