(No. 13096.—Reversed and remanded.) .

THE CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant in Error, vs. THE INDUSTRIAL COMMISSION et al.—(JOSEPHINE KILGORE, Plaintiff in Error.)

*Opinion filed February 18, 1920.*

1. WORKMEN'S COMPENSATION—*when risk of injury by elements is an incident to employment.* Risks to which all persons similarly situated are equally exposed and are not traceable in some special degree to the particular employment are excluded from the Compensation act, but the risk of injury by the elements is an incident to an employment and within the act where the employee's duties expose him to a greater risk from the elements than the general public or where the employment accentuates the natural hazard.

2. SAME—*injury need not be anticipated.* An injury, to come within the Compensation act, need not be anticipated, nor, in general, need it be peculiar to the particular employment in which the employee is engaged at the time of the injury.

3. SAME—*when injury by a tornado arises out of employment.* Compensation may be had for the death of an employee from injuries received when a tornado destroyed the building in which he was working where the employee's duties took him among steam pipes and ammonia coils, which exposed him to an unusual risk of being injured by fumes and escaping steam should the building be destroyed, and where the evidence shows that the ammonia fumes and escaping steam contributed most largely to the injuries which caused his death.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. JOHN H. MARSHALL, Judge, presiding.

T. N. COFER, and C. M. HEINLEIN, for plaintiff in error.

VAUSE & KIGER, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

The only question presented by the record in this case is whether or not the accident resulting in the death of George Kilgore arose out of his employment. The facts are admitted and all other matters conceded. The Indus-

trial Commission awarded compensation and the circuit court of Coles county set the same aside.

On May 26, 1917, Kilgore was in the employment of the defendant in error as chief engineer in its electric generating station and ice plant in the city of Charleston, Coles county, Illinois, and on that date a destructive tornado or cyclone swept over that city and blew down a portion of defendant in error's building. Kilgore, who was employed in the building, was killed. The defendant in error was engaged at the time of the accident in the business of furnishing electricity, ice, etc., for commercial and domestic uses. Its plant was consolidated in one building. The electric plant was in the north part of the building and the ice engine room immediately adjoined the electric plant on the south. The engine room where deceased was employed was equipped with an engine operated by steam through a pipe from the main boiler room. The feed-pipe from the boiler extended along the ceiling of the engine room for some distance and thence down to the engine. Along the south line of this room on the floor was the ammonia tank, which was surrounded with brick walls. A series of ordinary ammonia coils were connected with the large tank and located along the south wall of the room of the ice plant. These coils were carried overhead and connected with two compressors located just above the engine. The machinery was so connected that when the steam engine was in operation it forced the ammonia through the compression tanks and coils. Just east of the engine room was the equipment for making ice. The west wall of the building was about one hundred feet in length, parallel with and about a foot from the sidewalk on Fourth street. This wall was built of brick, was about twenty feet in height and eighteen inches thick. Near the north end of the wall was a double door about six feet in width, which led from the main engine room to the street. The plant was lighted by electric lights. On the day of the accident a tornado of unusual severity

291 — 17

swept across the north side of the city of Charleston, destroying nearly all of the buildings in its course, covering a space about three or four blocks in width. Thirty-six people were killed, about fifty people injured and a large amount of property lost as a result of this storm. The buildings of the defendant in error in which deceased was working at the time of his death were in the path of the tornado, and it blew in about twenty feet of the west wall of the plant to within about three feet of the ground, tearing off the roof and demolishing a large smokestack. It also broke the coils attached to the ammonia tank and the steam pipes connecting the boiler and the ice engine at the point of connection with the ice engine. The deceased was found at a point just inside of the engine room, between the north window and the ice engine, about three feet east of the west wall and five or six feet from the ice engine, in a standing posture, with bricks all around him, his face to the south and his body covered so that a part of his head and left arm were all that were exposed. When found Kilgore was conscious but unable to speak. While they were releasing him from the debris of brick, mortar, etc., the ammonia fumes were so strong that the rescuing party could work but a moment or two at a time. Kilgore was bruised and his body was severely scalded by escaping steam, his face and back and one side of his body extending along the right side of the head and shoulder down to the waist line were severely burned, from which injuries so received death resulted.

The determination of the question whether an injury arises out of the employment is one which is frequently attended with much difficulty,—not so much in the determination of the rule as in the application of the rule to the case under consideration. This court has in a number of cases quoted with approval the rule laid down in the *McNicol* case, 215 Mass. 497. In considering the question whether or not the injury arose out of the employment the Supreme

Court of Massachusetts there said: "It arises out of the employment. when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment, but it excludes an injury which cannot be fairly traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." In *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Com.* 288 Ill. 126, an employee was shot by another employee while engaged in his employment of washing out the boiler of a locomotive. It was there held that the shooting was incidental to and arose out of the employment, and that it could not be said, as a matter of law, that the injury was such as might happen to anyone not so engaged, quoting with approval the rule laid down in *Bryant* v. *Fissel*, 84 N. J. L. 72, that the risk of injury in the employment "may be incidental to the employment when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected therewith." It was also said in *Mueller Construction Co.* v. *Industrial Board*, 283 Ill. 148: "It was not the intention of the legislature to make the employer an insurer

against all accidental injuries which might happen to an employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workman's employment or incidental to such employment, and accidents in which it is possible to trace the injury to some risk or hazard to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment are excluded." In *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31, this court said: "There must be some causal relation between the employment and the injury. It is not necessary that the injury be one which ought to have been foreseen or expected, but it must be one which after the event may be seen to have had its origin in the nature of the employment."

There appear to have been no cases previously considered by this court where the injury was caused by a cyclone, and the defendant in error contends that the injury did not arise out of the employment for the reason that the deceased was not at the time of his injury subjected to any more or different risk than that to which the public in that immediate vicinity were subjected by reason of the cyclone in question. While the English cases on the subject of injuries from the elements seem not to be in entire harmony, yet an examination of them shows that what appears to be a want of uniformity is one more of the application of the rule than of the holdings concerning the rule itself. Under the English cases the rule appears to be that if the character of the employment be such as to create or intensify the risks that arise from extraordinary natural causes, an accident under such circumstances is held to be one arising out of the employment, the controlling question being whether or not the accident, under the circumstances of the employment, was merely a consequence of the severity

of the elements, to which persons in the locality, whether so employed or not, were equally exposed. In *Morgan* v. *Owners of Steamship Zenaida,* 25 S. L. 446, compensation was allowed where a man in the tropics sustained a sunstroke while painting the side of a ship, it being held that he was subjected to a greater risk of sunstroke in his position owing to the reflection of the heat from the side of the vessel. So in *Davies* v. *Gillespie,* 5 B. W. C. C. 64, compensation for a sunstroke was sustained by reason of the employee having to stand on the steel deck of a ship without shelter for a period of five hours and having to bend over the hatchway, it being held that the circumstances of his employment were such as subjected him to greater risk from sunstroke than that of others on board the ship; also in *Anderson & Co.* v. *Adamson,* 50 S. L. 855, where a man, while working in a stooping position in a yard, was injured by slate blown from a roof by a violent gale. In *Andrew* v. *Failsworth Industrial Society,* 2 K. B. 32, which is considered a leading English case, a bricklayer was killed by lightning while working on a scaffold some twenty-three feet from the ground. It was held in that case that his position, under the circumstances there shown, subjected him to a peculiar danger and risk from lightning to which those not so engaged were not subjected, and that the injury resulting in his death arose out of his employment.

There are in the English reports a number of cases, on somewhat similar facts, which hold that the employment of the employee could not fairly be said to create or intensify the risks that arose from natural causes so as to expose him to some peculiar or extraordinary danger, and that the accident in such a case does not arise out of the employment. Such a case was *Warner* v. *Couchman,* 1 K. B. 351, where a baker, in making his rounds delivering bread to his employer's customers on a cold day, contracted a chill, followed by œdema. It was held that he was not injured by an accident arising out of his employment and not en-

titled to compensation, for the reason that there was nothing in the nature of his employment which exposed him to more than the ordinary risk of cold to which any person working in the open was exposed on that day. In *Kelly* v. *Kerry County Council,* 1 B. W. C. C. 194, a van-driver's hand was affected by the cold while driving in Kent on a winter afternoon, and it was held that such injury did not arise out of his employment. So in *Keremaker* v. *Owners of Steamship Corsican,* 4 B. W. C. C. 295, where a seaman sustained frostbite while working during the winter on a ship at Halifax, Novia Scotia. In *Robson, Eckford & Co.* v. *Blakely,* 5 B. W. C. C. 536, a plumber was overcome by the heat while attending to his work in a trench in the open air during a hot July day, and he was held to have been subjected to only such risk as was common to those in that neighborhood on that day. In *Kinghorn* v. *Guthrie,* 50 S. L. 863, a man leading a horse and cart out of his employer's yard was struck by a piece of corrugated iron which had blown from an adjoining roof by a violent gale of wind. That case distinguishes the *Adamson case, supra,* on the ground that in the latter case the employee, owing to the stooping position required by his employment, was not able to see the slate coming. In the Scotch case of *Rogers* v. *School Board,* (1912) S. C. 584, an employee was struck by lightning, and the court, in commenting upon the rule in this class of cases, said: "To be struck by lightning is a risk common to all and independent of employment, yet the circumstances of a particular employment might make the risk not the general risk but the risk sufficiently exceptional to justify its being held that an accident from such risk was an accident arising out of the employment."

It is held generally in this country that in order that an injury may be said to arise out of the employment the risk of being injured by the elements must be one incidental to the employment and not common to the public. Regard-

less of the nature or the fact of such employment or the
risk being common to the general public, the employee must
have been exposed to it in a greater degree than other per-
sons by reason of his employment. Risks to which all per-
sons similarly situated are equally exposed and not traceable
in some special degree to the particular employment are ex-
cluded. (Corpus Juris, treatise on Workmen's Compensa-
tion acts, 77.) The cases are not, however, in complete
harmony in the application of this rule to similar facts. In
*Larke* v. *John Hancock Life Ins. Co.* 90 Conn. 303, an in-
surance solicitor who was required by his duties to drive
a long distance on a cold day was injured from frostbite.
Compensation was allowed on the ground that his duties
subjected him to dangers from the elements which other
persons in ordinary pursuits in that locality were not sub-
jected to. In *In re McManaman,* 224 Mass. 554, a long-
shoreman's hands were frozen while he was engaged in
unloading goods from a steamship, and it was held that he
was entitled to compensation for the reason that under the
circumstances surrounding his employment he was put into
a peculiar position of hazard not common to others engaged
in outdoor work at that time and in that neighborhood. In
*LaVeck* v. *Parke, Davis & Co.* 190 Mich. 604, the employee
was engaged in the work of making bouillon from beef by
boiling and certain other processes, in a room where re-
torts and appliances were maintained for that purpose, and
was overcome by heat. The weather was hot and an amount
of bouillon greater than usual was being made, requiring a
higher degree of heat in the process, so that considerable
heat and steam escaped into the workroom. The court held
that owing to the unusual hours of work and unusual con-
ditions surrounding the employment the employee was sub-
jected to risks not common to others in that neighborhood,
and that the injury was an accident within the meaning of
the law and arose out of the applicant's employment. In
*State* v. *District Court of Ramsey County,* 129 Minn. 502,

compensation was allowed where a driver of an open ice wagon, who was required to follow a fixed route without regard to weather conditions, left his wagon in a severe storm and went under a tree within a lot line, either for protection from the storm or on his way to solicit orders, and was struck by a bolt of lightning and killed. It was held that the risk of being struck by lightning which the employee in that case was subjected to was increased by reason of his employment over the risk of the public in that vicinity, for the reason that his employment required him to cover a certain route each day, regardless of weather conditions.

On the other hand, in *Burke* v. *Balentine & Co.* 38 N. J. L. 105, a laborer died as a result of being overheated in the wash-house of the defendant's brewery, and it was held that the deceased was subjected to the same dangers from the excessive atmospheric conditions of a hot summer day as was every other person who had to work in the general locality of the brewery where he was employed and that compensation could not be recovered in such case. So it was also held in *Klawinski* v. *Lake Shore and Michigan Southern Railroad Co.* 185 Mich. 643, where a railway section hand was killed by lightning while in a barn near the right of way, to which he had gone for protection. Likewise in *Hoenig* v. *Industrial Com.* 159 Wis. 646, where an employee was killed by lightning while working on a dam, the Industrial Commission found that the injury did not arise out of the employment. This finding was sustained, the court, however, saying that if it were to pass upon the facts it would make a different finding. In the *Larke case, supra,* it was held to be the rule that the conditions of an employment which so expose an employee to injury from the elements that it may be said that the injury arises out of the employment, are such conditions as are peculiar to the circumstances of his employment and are such exposure to risk as the public generally is not subjected to.

It was there held to be immaterial where the danger origi-
nates,—whether it be from the employment or outside of
it,—so long as it is incident to it; that it may be said to
originate from the employment in a case where the danger
arises from the conduct of the employment itself, and, on
the other hand, the danger may arise outside of the employ-
ment but the employee by reason of such employment be
subjected to a greater risk of injury from such outside
danger than others not so situated. In such a case his risk
may be said to be incident to his employment.

We believe the reasonable rule to be that if deceased,
by reason of his employment, was exposed to a risk of be-
ing injured by a storm which was greater than the risk to
which the public in that vicinity was subject, or if his em-
ployment necessarily accentuated the natural hazard from
the storm, which increased hazard contributed to the injury,
it was an injury arising out of the employment although
unexpected and unusual. An injury, to come within the
Compensation act, need not be an anticipated one, nor, in
general, need it be one peculiar to the particular employ-
ment in which one is engaged at the time. While the risk
arising from the action of the elements, such as a cyclone,
is such a risk as all people of the same locality are sub-
jected to, independent of employment, yet the circumstances
of a particular employment may make the danger of receiv-
ing a particular injury through such storm an exceptional
risk and one to which the public generally is not subjected.
Such injury may be then said to arise out of the employ-
ment. In the instant case, while the risk of being injured
by this cyclone may be said to have been a risk common to
the public in the vicinity of such cyclone, regardless of em-
ployment, yet if there was in the circumstances of Kilgore's
employment an unusual risk or danger of injury from the
destruction by storm of the building in which he was em-
ployed, such risk may be said to be incident to the employ-
ment of the deceased and the injury received to arise out

of such employment. Deceased at the time the storm broke was engaged in assisting and directing the closing up of the plant of defendant in error. These duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes should the building be destroyed by storm. The evidence shows that the ammonia fumes and scalding steam contributed most largely to the injuries which caused his death. We are therefore of the opinion that there were in the circumstances of the employment of the deceased risks of being injured by the storm not common to the public in that vicinity, and the circuit court therefore erred in setting aside the award.

The judgment of the circuit court will therefore be reversed and the cause remanded, with directions to that court to enter an order confirming the award.

*Reversed and remanded, with directions.*