No. 2363

Second Circuit Appeal

---

ISABEL TRAVINO GASCA v. TEXAS PIPE LINE COMPANY

(June 30, 1925, Opinion and Decree)
(July 23, 1925, Rehearing Opinion and Decree.)
(October 6, 1925, Writ of Certiorari to Supreme Court Refused.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant—Par. 158.

Where an employee who, at noon time, was served a meal at his work, and a few minutes before resuming actual labor on the pipe line was killed by lightning while taking shelter under a tree; held, the accident arose out of and in the course of his employment as contemplated by Section 2 of Employers' Liability Act No. 20 of 1914, as amended by Act No. 38 of 1918.

ON APPLICATION FOR A REHEARING.

2. Louisiana Digest—Master and Servant —Par. 158.

Where a workman is struck by lightning while taking shelter under a tree during the lunch hour; there is a sufficient causal connection between the employment and the accident to allow compensation under the Workman's Compensation Act No. 20 of 1914. The suspension of work in order to eat lunch did not constitute a break in the employment.

(Section 1, subsection 2 of Act 20 of 1914. Editor's note.)

Appeal from the Second Judicial District Court of Louisiana, Parish of Claiborne, Hon. John S. Richardson, Judge.

This is a suit brought by the wife of an employee killed by being struck by lightning. There was judgment for plaintiff and defendant appealed.

Judgment affirmed. Rehearing refused.

E. E. Clack, Smitherman Tucker & Mason, of Shreveport, attorneys for plaintiff, appellee.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for defendant, appellant.

REYNOLDS, J. This is a suit by Mrs. Isabel Travino Gasca as the widow and for Andrique Gasca as the minor child of Gil Gasca, deceased, for compensation under the Workmen's Compensation Act for the death by lightning of Gil Gasca while in the employment of defendant in Claiborne parish, Louisiana.

Defendant denied liability.

The case was tried on an agreed statement of facts as follows:

"In this case it is agreed between counsel for plaintiff and counsel for defendant that the case be submitted on the petition of the plaintiff and the answer of the defendant and the exception of no cause of action pleaded on the following statements of facts, to-wit:

"That the Texas Pipe Line Company on the 31st day of July 1923, and before and after, engaged in laying a pipe line in Claiborne parish, Louisiana, and that the deceased, Gil Gasca, at said date and at the time of his death was employed by the said company as a laborer in laying said pipe line, his wages being $3.00 per day and his total weekly compensation being $18.00.

That the said Gil Gasca with his co-workers lived in a camp furnished them by the Texas Pipe Line Company approximately two miles from the place where the deceased was struck by lightning; that said Gil Gasca and his said co-workers were conveyed to and from the said camp to the place of employment where the accident in question happened by the said Texas Pipe Line Company; that meals were furnished by the said Texas Pipe Line Company to the said Gil Gasca and his said co-workers, said meals being brought from the camp to the place of employment and accident by the said Texas Pipe Line Company in a wagon which was stopped some seventy-five yards from the spot where they were working and the employees were given the usual noon hour off for lunch.

"That on July 31, 1923, during the noon or rest hour between twelve and one o'clock after the said Gil Gasca and his co-workers had stepped off a short distance from their work and had eaten their lunch and a short time before time for them to return to their work, a thunder storm and rain came up, and that the said Gil Gasca and two of his companions sought to take shelter from the rain under a tree near the spot where they were working; that there was no other shelter and that said tree was the most convenient shelter from the rain available for them, and that while under said tree the said Gil Gasca and his two fellow-workmen were struck by lightning and were instantly killed.

"That the defendant company did what it could to communicate with the relatives of the deceased workmen and to comply with their requests as to dispo

sition of the bodies, and that defendant had the body of the said Gil Gasca embalmed and shipped with an attendant to Dallas, Texas, at its own expense.

"It is agreed and admitted that plaintiff, Isabel Travino Gasca, is the surviving widow of the said Gil Gasca, deceased, and that she was living with him at the time of his death; that Andrique Gasca, aged two years and two months, is the sole and only living child of the marriage of plaintiff with Gil Gasca, deceased; that at the time of his death the plaintiff was wholly dependent upon the said Gil Gasca, deceased, for support."

On final trial there was judgment in favor of the plaintiff and defendant appeals.

## OPINION

Judge John S. Richardson, who tried the case, gave the following well-considered reasons for the judgment rendered herein:

"This is a suit for compensation under the Workmen's Compensation Act of this state, brought by the surviving widow and child of one Gil Gasca, killed by lightning while working for defendant in Claiborne parish, Louisiana.

"The facts are not disputed and the case is submitted to this court upon an agreed statement of facts.

"The circumstances under which Gasca was killed were about as follows:

"In the month of July, 1923, Gil Gasca, a Mexican, was employed by defendant to work on its pipe line being built through Claiborne parish, Louisiana. The company maintained a camp about five miles from the place of the accident for the benefit of Gil Gasca and his fellow-employees and meals were sent from the camp to the place of work.

"On the particular day in question, lunch had been brought to Gil Gasca and his fellow employees by the company and distributed to them near his place of work. A few minutes prior to resumption of actual labor on the pipe line a thunder storm and rain came up and Gasca and his fellow-workmen sought shelter under a tree in the vicinity. Lightning struck the tree and killed Gasca and two others with him.

"Upon the refusal of the defendant to pay the widow and surviving child com-

pensation for the death of their husband and father, as set forth in said act, this suit was brought.

"The defense to this action is that death by lightning, under the circumstances set forth above, is not such an injury arising out of and in the course of his employment as is contemplated by Section 2 of the Workmen's Compensation Act of this state.

"Therefore, the matter to be determined by the court is whether the injury complained of was such an injury arising out of and in the course of his employment, as contemplated by Section 2 of the Workmen's Compensation Act of the State of Louisiana, or whether the injury complained of was the act of God.

"The phrase, 'out of and in the course of his employment,' which in itself appears to be clear enough, has given occasion in its interpretation to a great many decisions, both in this country and in England, for it occurs in the Workmen's Compensation Act or statute of England, which is the prototype of our American statutes on the same subject, including Act 20 of 1914. The courts have had no trouble from the various decisions in agreeing that 'out of' does not mean the same thing as 'in the course of,' but means something more; that an injury may have been received 'in the course of the employment' and yet not 'out of it.' ·The words, 'out of,' point to the origin or cause of the accident; the words, 'in the course of,' to the time, place and circumstances under which the accident occurs. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words, 'out of,' involves the idea that the accident is in some sense due to the employment. The courts have finally determined that each case must be determined from its own facts, that the question cannot be solved by phrases; illustrative cases, therefore, will best serve as a guide to what has been considered to be the intention of the statute

"In Lawyers' Reports Annotated, 1916A, page 40, there are various English cases covering this principle of law, covering all points arising from the point being

presented to the court in this matter. The report goes at length in giving various decisions. I will call attention to only a few, but refer to the entire citations as therein contained.

"In the case of Rowland vs. Wright, an English case, it was held that where a workman employed in a stable was bitten by the stable cat while eating his dinner, the court held that the injury was incidental to the employment.

"In the case of Morgan vs. Zenaida, 25 Times L. R. 446, the court held that an ordinary seaman who, while engaged in painting the sides of a vessel lying in a port of the Mexican coast, was seized with sunstroke, is injured by accident arising out of his employment.

"In the case of Andrew vs. Failsworth Industrial Society, 2 K. B. 32, the court held that an injury to a bricklayer on a scaffolding twenty-five feet high by lightning may be said to be caused by an accident arising out of the employment.

"Taking these decisions together with many decisions referred to in the said Lawyers' Reports Annotated, the court is of the opinion that from the English court the claims of the plaintiff in this case should be sustained.

"Now as to the jurisprudence of states other than Louisiana on questions of this nature:

"In the case of Nicholls vs. Indianapolis Abattoir Co., 92 Conn. 274, 102 Atl. 604, and other cases cited in 10 A. L. R. 1489, we find: 'That an injury to an employee may be said to arise in the course of his employment when it occurs within the period of his employment at the place where he reasonably may be and while he is reasonably fulfilling the duties of his employment or is engaged in something incidental to it.'

"In * * * American Lawyer's Reports the court says, in quoting from decisions therein stated, that 'even though a workman was paid by the hour the intermission for dinner could be regarded as part of the time allowed for some purpose ancillary to the work to be done; as an example, *eating the necessary food;* it would be taking a strained view to say that the pause in the middle of the work for dinner was a break in the employment."

"The Workmen's Compensation Statutes being intended to take the burden of the

waste of life and limb off the shoulders of workingmen and to place it upon those of their employers, to give such effect to the statutes they should be liberally interpreted.

"It has been held by practically every state which has adopted a Workmen's Compensation Act that injury from heatstroke or sunstroke is an accident arising out of and in the course of the employment within the contemplation of the Workmen's Compensation statutes.

"13 A. L. R., p. 979:

"Injury from heatstroke or sunstroke is generally considered to be an injury by accident.

"State ex rel. Rau vs. District Court (1917), 138 Minn. 250; L. R. A. 1918F 918.

"Young vs. Western Furn. & Mfg. Co., 101 Neb. 696; L. R. A. 1918, B, 1001.

"Hernon vs. Holshan, 182 App. Div. 126; 169 N. Y. Supp. 705.

"Ismay I. & C. vs. Williamson, 1 B. W C. C. 232; 77 J. P. C. N. S. 107.

"99 L. T. N. S. 595; 24 Times L. R. 881; 42 Ir. L. T. 213; 52 Sol. Jr. 713.

"Davis vs. Gillespie, 105 L. T. N. S. 494; 28 Times L. R. 6; 56 Sol. Jr. 11.

"Maskery vs. Lancashire Shipping Co., 7 B. W. C. C. 428; W. C. & Ins. Rep. 290.

"13 A. L. R. 974.

"The rule is generally recognized that if an employee by reason of his duties is exposed to a special or peculiar danger from the elements—that is, one greater than other persons in the community—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment within the meaning of the Workmen's Compensation Acts.

"Connecticut.—Larks vs. John Hancock Mut. L. Ins. Co. (1916), 90 Conn. 303; L. R. A. 1916E, 584; 97 Atl. 320. DeLuca vs. Parks Commissioners (1919), 94 Conn. 7; 107 At. 611.

"Illinois.—Central Ill. Pub. Serv. Co. vs. Industrial Comm., 291 Ill. 256; 126 N. E. 144 (1920).

"Indiana.—Re: Harraden (1917), 118 N. E. 142. Thier vs. Middlefield (1920), 178 N. W. 16.

"Massachusetts.—McMannaman's case (1916), 113 N. E. 287.

"Minnesota.—State ex rel. People's Coal and Ice Co. vs. Dist. Co. (1915), 153 N. W. 119.

"New York.—Days vs. S. Trimmer & Sons (1916), 162 N. Y. Supp. 603. Clausen-Flannagan Brewery (1918, 171 N. Y. 522.

"Wisconsin.—Ellingson Lumber Co. vs. Industrial Comm. (1918), 169 N. W. 568.

"Pennsylvania.—Lane vs. Horn, etc. Baking Co., 104 Atl. 615.

"England.—Andrew vs. Failsworth Industrial Soc. (1904), 20 Times L. R. 429; Morgan vs. The Zenaida (1919), 25 Time L. R. 446.

"Canada.—Wiwwiczuk vs. McArthur (1916), 280 L. R. 279; 16 A. L. R. 1039.

"Matis vs. Schaeffer (1921), 270 Pa. 141; Miguez vs. Delcambre, 113 La. 64, 36 South. 888: Where an employee received an injury caused by a sunstroke that the Workmen's Compensation Act applied to the injuries.

"Murray vs. Greenings Cons. Co. (1921) 1917 App. Div. 903, 188 N. Y. Supp. 193 held that injuries caused by a sunstroke was an accident 'arising out of' and 'in the course of' his employment.

"Volume 15, Negligence and Compensation Cases Annotated, page 674: Heat stroke, sunstroke, lightning, frostbite or injury or death resulting from exposure is accident under Compensation Acts.

"State ex rel. Va. & Rainey Lake Co. vs. Dist. Ct. St. Louis Co., 164 N. W. 585.

"Day vs. Trimmer & Sons, 162 N. Y. Supp. 603.

"Griffith vs. Cole Bros. et al., Iowa, 165 N. W. 577.

Vol. 17, Neg. and Compensation Cases Annotated, 998: Heat, sunstroke or injury or death resulting from exposure is accident under Compensation Acts.

"Walsh vs. River Spinning Co., Rhode Island, 103 Atl. 1025.

"Lane vs. Horn Baking Co., Pa., 104 Atl. 615.

Pack vs. Prudential Casualty Co., 170 Ky. 47; L. R. A. 1916 E. 592.

"R. C. L., Vol. 28, page 795.

"'According to the weight of authority compensation should be allowed where it is shown that incapacity or death has resulted from sunstroke or heatstroke.'

"State vs. Ramsey, County, (Minn.), 164 N. W. 916; L. R. A. 1918F 118.

"Notes: L. R. A. 1916A 291; L. R. A. 1918F 937; L. R. A. 1918F 872; 15 Ann. Cases 886."

In this case the employee was a bricklayer paid by the hour who was at liberty to remain upon the premises to eat dinner or not as he saw fit. He sat down during the noon hour in the shade of the wall which he was building and while there was seriously injured by a wall falling on him.

The case at bar is specially applicable to the one just quoted. The party killed by lightning was employed by defendant on its pipe line, at noon time was served at his work, and a few minutes before resuming actual labor on the pipe line a thunder storm and rain came up and Gasca and his fellow-employees with him sought shelter under a tree in the vicinity; lightning struck the tree and killed Gasca and two of his fellow-workmen with him. At the time of the accident the said Gasca was in the course of his employment at the place where he reasonably would be, and where he was reasonably fulfilling the duties of his employment and was engaged in something incidental to it.

In the case of Thomas vs. Proctor & Gamble Company, 104 Kansas * * *, a girl was injured during the lunch hour which lunch she ate in the factory, was injured while playing on a truck. This was held to be in the course of employment. The following cases are in a direct line with the above:

Racine Rubber Co. vs. Industrial Comm., 165 Wis. 600; 6 Am. Law Rep. 1151;

Donlen vs. Kippa Bay Brewing Co., 179 N. Y. Supp. 95; 285 Ill. 372;

Haller vs. Lansing, 195 Mich. 753.

The Louisiana decisions and jurisprudence is quite in line with the jurisprudence of other states and England. However, on the identical question at issue, that is, injury resulting in death by lightning, same has not been definitely determined.

In the case of Meyers vs. L. R. & N. R. R. Co., 140 La. 938, 74 South. 256, it held: "Where an employee in going from his work to his lodging-house on the premises where he works, he is within the meaning of Paragraph 2 of Section 1 of the Employers' Liability Act performing services arising out of and incidental to his employment in the course of his employer's business, trade or occupation."

I think the reference above made, together with discussions of the principles of law, fully explain the meaning of the section as to accidents arising out of and in the course of employment as contemplated by Section 2 of the Workmen's Compensation Act of this state.

The next question is whether the injury by lightning arises out of or in the course of or incidental to employment, and whether damages can be assessed for injuries resulting from lightning when an employee is working in the course of employment.

Section 38 of the Act defines the word, "accident." It says "the word, 'accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury."

From this definition it is clear that the lawmakers intended to include with the term, "accident," personal injuries produced by outside forces of nature, such as wind and lightning, for it says, "with or without human fault."

The Supreme Court of this state, so far as the court can ascertain, has not passed

directly upon a compensation case involving the question of whether or not an injury received by an employee in the course of his employment from a bolt of lightning is an injury arising out of his employment. The only case found by the court covering injury by lightning is in the case of Arthur vs. Alexandria Lumber Co., 143 La. 207, 78 South. 469. In this case the court says that the employee who was injured had taken refuge in a frame building on defendant's premises during a rain. While the employee was in the building some wires · strung near to or in the building attracted a flash of lightning and killed him.

The court is impressed that, under our statute, the law as applied to accidental injuries caused by lightning is in no wise different from the law as applied to accidental injuries caused by other forces of nature. Lightning is a mysterious force and no one can fortell where, when or what it will strike. The same is true of wind and other forces.

From the various decisions of England, of the different states of the Union, and the Meyer case in the state of Louisiana, the court is driven to the conclusion based entirely upon the jurisprudence as above indicated and not in any way coming to a conclusion based upon equity, but solely upon questions of law and the jurisprudence as outlined, that the basis upon which compensation is claimed where the injury was caused by lightning where the employee was seeking shelter from the elements while in the course of employment is that it is not only the privilege but the duty of an employee to seek shelter from the elements in that he might be able to continue his work and not endanger his health and disrupt his employment due to exposure.

I think that the Workmen's Compensation Act should be liberally construed so as to effectuate its purpose; that it should have a liberal construction in favor of the employee. The court cannot see how from the jurisprudence as discussed it can be said that Gasca suffered an injury that did not arise out of his employment.

He was paid by the day, furnished board and lodging, and that furnished to him only by defendant; his condition was that he was under the supervision of the defendant during the whole day, set apart for work; he was either in the actual performance of his work or was on the premises furnished by the employer for his rest. His meals were brought to him from the camp and furnished by the employer. He was just as much in the course of his employment when eating lunch as he was when actually engaged working on the pipe line. It was his duty to seek shelter under the tree, and while so doing was struck with lightning, and is therefore under the jurisprudence established entitled to damages.

The defendant cites to the court the general rules governing liability of the employer under the Workmen's Compensation Acts stated in 28 Ruling Case Law 306, together with other citations on the subject. These decisions and the argument of counsel is good, based on his contention and which may be the equitable view of the case; but from the weight of the jurisprudence heretofore quoted, the weight of the law seems to be to the contrary.

Viewing the matter from another point, that is, that the act of lightning is not controlled by man but by the act of God, this is correct; but where the employment is such as would subject the employee to greater risk of being struck by lightning than if he was in other employment, then the accident would result in the course of employment.

The court has tried to review this matter as closely as possible with the light before it, and not having a decision of the court of the State of Louisiana directly in point has resorted to the jurisprudence of other states and. of England, and after considering the matter fully, it has come to the conclusion that the law is in favor of· the plaintiffs in this case. The wording of the statute as interpreted in the various decisions and the facts admitted in this case entitled the plaintiff to ·judgment. No one could have foreseen, and doubtless no one expected, that a bolt of lightning would strike the tree where they were working or near where they were working, in the course of employment, and destroy his life; but since the event has happened it ap-. pears to me that the accident had its origin in the ˙risk connected with the employment of Gil Gasca and flowed from that source as a rational consequence. There will, therefore, be judgment in favor of the plaintiff, Isabel Travina Gasca and against the defendant, Texas Pipe Line Company, for the full sum of two thousand four hundred and thirty and no-hundredths dollars, payable at the rate of eight and ten-hundredths dollars per week for three hundred weeks beginning August 8, 1923, with legal interest on the past due installments from maturity until paid for the common . benefit of herself and her minor child, and that the defendant pay all costs of this suit.

Thus done, read and signed in open . court on this, the 9th day of March, 1925.
(Signed) JOHN S. RICHARDSON; Judge.

In addition to the very able reasons assigned by our learned brother of the lower court for his ˙decision herein, we cite the case of Kate Box vs. Big Pine Lumber Company, Inc., No. 1674 on the docket of this court, the decision in which was rendered by Judge Robert Roberts, Jr.

Under the statement of facts there was no other shelter and the tree was the most convenient shelter from the rain available to the deceased and his ˌmeals were sent to him by the defendant during the meal hour on or along or adjacent to the pipe line that he was helping to lay.

This condition caused the lightning, we think,. to be a fact incident to the employment of the deceased.

For the reasons assigned, it is ordered, adjudged and decreed ˙that the judgment of the lower court be affirmed.

·ODOM, J., dissents.

---

## ON APPLICATION FOR REHEARING.

CARVER, J. In an able brief foṟ rehearing, defendant's counsel urge that this court as well as the District Court

"ignored the fundamental principle of workmen's compensation that as a basis of liability there must be some causal relation between the employment and the accident, and that, adopting a loose dictum construing the statute as a kind of insurance, the court had gone beyond the limit of reason and construed the statute in this case not only as a species of particular insurance within the limitations of the statute but as a general accident and life insurance; · the only relation between the death and the employment being that the deceased was on the payroll."

I.

We ˙do not mean to hold that the statute is a general accident and life insurance provision requiring no relation between the accident and the employment beyond the fact that the deceased was on the payroll. We think the death in this case compensable, though, because, as we appreciate the law and the facts, the conditions to which Gasca's employment subjected him, increased the risk from lightning and,

under the authorities, we think this a sufficient causal connection between the employment and the accident.

In counsel's brief they say very little about lightning cases, but annexed to their brief is a carbon copy of the decision of the Court of Appeals of the state of New York in the case of McCarter vs. LaRock, 212 N. Y. App. Div. 843, 207 N. Y. S. 872.

This decision holds that an employee at work on a building being erected by his employer and injured by flying fragments of an exploding shell which had been preserved on the adjoining premises as a souvenior of the war was not entitled to compensation.

The court holds that there was nothing more in the case than the mere location of the employee in the pathway of the accident which was entirely disconnected from his employment, and holds, further, that, in order to be compensable, there must be in addition to this some causal relation.

The decision was rendered by Chief Justice Hiscock and concurred in by three other justices; two others dissented and one was absent. Justice Hiscock is the same judge who rendered the decision in the Madura case, hereinafter mentioned, wherein all the justices concurred.

A careful examination of the decisions in the twelve lightning cases examined by us makes it apparent that notwithstanding the diversity of conclusions arrived at there is substantial agreement in nearly all the cases as to the proper governing principle.

Those cases are as follows:

Box vs. Pig Pine Lumber Co., Ltd., No. 1674 on the docket of this court.

Andrew vs. Fallsworth Indust. Soc., 2 K. B. 32, 6 W. C. C. 11;

Kelly vs. Kerry County Council, 1 B. W. C. C. 194, 42 Ir. L. T. 23;

State vs. Ramsey Co. Dist. Ct., 129 Minn. 502, 153 N. W. 119; L. R. A. 1916A 344;

Klawinski vs. L. S., etc., R. Co., 185 Mich. 643; 152 N. W. 213; L. R. A. 1916A 342;

Koenig vs. Indust. Comm., 159 Wisc. 646; 150 N. W. 996; L. R. A. 1916A 339;

DeLuca vs. Park Commrs., 94 Conn. 7, 107 Atl. 611;

State Road Commn. vs. Indust. Commn. (Utah), 190 Pac. 544;

Wiggins vs. Indust. Acci. Bd., 54 Mont. 935; 170 Pac. 9; L. R. A. 1918F 932;

Thier vs. Widdifield (Mich.), 178 N. W. 16;

Griffith vs. Cole, 183 Iowa 415; 165 N. W. 577; L. R. A. 1918F 923;

Madura vs. City of New York, 238 N. Y. 214, 144 N. E. 505.

In the DeLuca, Madura and Box cases and in State vs. Ramsey County District Court, the persons killed were under trees; and in Andrew vs. Fallsworth, he was working on a scaffold twenty-three feet high.

In the Koenig case he was working on a dam.

In the Kelly case he was picking stones and clearing gutters.

In State Road Commn. vs. Indust. Commn. he had left the road where he had been working to go to a house for shelter and was killed before reaching there.

In the Wiggins case he was working on a metal road grader.

In the Klawainski and Thier cases they were in barns.

In the Griffith case he was sitting in a tent.

In the three tree cases and the scaffold case it was held that the accidents arose out of the employment and compensation was allowed, except in State Road Comm. vs. Industrial Comm., where the accident was held not to arise out of the employment, but compensation allowed because

the statute did not require that it should so arise.

In the Griffith case the ground of the decision was, in part, the theory that lightning was the act of God.

In the other cases where compensation was disallowed, the ground of the decision was, we think, that the situations of the workmen did not, as a matter of fact, expose them to any special risk from lightning.

In other words, in most if not all the cases the crucial question was one of fact. If in a particular case it was found that the situation of the workman because of the employment increased the risk from lightning, there was liability; if it did not, there was none.

In the Madura case the decedent was working on a parkway when a thunder storm arose. Being directed by his foreman to remain until after the storm in order to perform various duties, he sought shelter under a tree, there being no other provision for shelter made by the employer, and while standing there he was struck by lightning and killed. The Industrial Board found that his death was the result of injuries arising out of his employment, which finding the appellant urged was erroneous because the danger of being struck by lightning was common to everybody in that vicinity and therefore not a risk specially attributable to the employment of the decedent for which an award could be made. The Court of Appeals sustained the finding of the Industrial Board. The court says:

"The only question then is whether, as the result of his employment, which continued while he sought shelter, he was exposed to any unusual risk. Matter of Katz vs. A. Kadans & Co., 232 N. Y. 420; 134 N. E. 330; 23 A. L. R. 401.

"We think that, as the result of judicial knowledge, which may be taken of scientific facts, the Industrial Board was permitted, without expert evidence, to find as it did by implication, and that we are permitted to say that he was. It is a matter of widespread scientific belief and declaration that a wet tree is a ready conductor of a current of electricity, and that a person standing under such a tree is exposed to a degree of danger which does not confront one in the open spaces of a highway or field. Chiulla De Luca vs. Bd. Park Comm'rs of City of Hartford, 94 Conn. 7, 107 Atl. 611. This scientific belief is so widespread that we think the Industrial Board had the right to take notice of it, without testimony, in deciding that this accident was the result of a special risk incidental to the employment of the decedent. Jackson vs. Wisconsin Tel. Co., 88 Wisc. 243; 60 N. W. 430; 26 L. R. A. 101; Star vs. South Bell Tel. Co., 156 N. C. 435, 72 S. E. 434. If we are correct in this, then certainly there was evidence to sustain the finding of the Industrial Board, assuming that we are permitted to consider that question.

"Accidents resulting from lightning have been the subject of conflicting decisions. But in the cases which have held that an award should not be made for death resulting from such a cause, there has been quite uniformly a finding of fact that there was not any unusual risk of such an accident incidental to the employment, and that therefore the accident could not be charged to the latter, or said to spring out of it. Kelly vs. C. C., 1 B. W. C. C. 194; Wiggins vs. Industrial Accident Bd., 54 Mont. 335, 170 Pac. 9; L. R. A. 1918F 932; Ann. Cas. 1918E 1164; Koenig vs. Industrial Commn., 1159 Wis. 646; 150 N. W. 996; L. R. A. 1916A 339; Klawinski vs. Lake Shore & M. S. Ry. Co., 185 Mich, 643; 152 N. W. 213; L. R. A. 1916A 342.

"On the other hand, it has been held in several cases, as is being held here, that there sprang from the employment in which the workman was engaged a special risk of being struck by lightning, and that, therefore, compensation should be awarded. Andrew vs. Failsworth Ind. Soc., Ltd., 6 W. C. C. 11; State ex rel. People's Coal and Iron Co., District Court of Ramsey County, 129 Minn. 502; 153 N. W. 119; L. R. A. 1916A 344; Chiulla DeLuca vs. Bd. Park Com'rs, supra."

In the DeLuca case, supra, the court said:

"It is clear that the compensation commissioner had the power to take notice of scientific authority and dicta in reaching the conclusion complained of.

"We no not decide that there is greater danger under a tall tree in a thunder shower than in other places, but we have no hesitation in holding that the commissioner did not find this decisive fact without substantial evidence.

"Thus in Appleton's American Encyclopedia, Vol. X, p. 463, it is stated that: 'Dangerous is it therefore to take shelter under a tree during a thunder gust.'

"In the last edition of the Americana (Vol. XII), under the title 'Lightning,' the writer says that: 'Fatalities are everywhere increased by the tendency to seek shelter from the rain when caught in a storm; and these isolated shelters, as trees, barns, monument buildings in public parks, etc., are among the most liable to be struck.'

"In the Encyclopedia Britannica, Vol. II, (11th Ed.), p. 869, par. 35, under the title, 'Atmospheric Electricity,' the writer says: 'The fact that a considerable number of people sheltering under trees are killed by lightning is generally accepted as convincing proof of the unwisdom of the proceeding. When there is an option between a tree and an adjacent house, the latter is doubtless the safer choice.'

"See, also, Paul Burt's 'First Steps in Scientific Knowledge,' p. 52.

"In Harper's Magazine, Vol. XLI, p. 33, a tall tree is portrayed with electricity flowing from the highest point of the tree to the ground. This illustration is designated, 'The Natural Lightning Rod.' This illustration appears in an article entitled, 'The Mysteries of a Thunder Shower,' which was written by Jacob Abbott, a famous juvenile writer and educator.

"To repeat: The compensation commissioner has found that: 'There is clear preponderance of scientific authority to the effect that there is greater danger under a tree or in the open than when protected in a house.'

"This finding should stand, as it is not contrary to reason and is consistent with the evidence.

"The remaining reasons of appeal present the claim that, as a matter of law, under no circumstances can death by lightning constitute a personal injury for which an allowance can be made under our Compensation Act.

"If the place under the tree were the more dangerous, the fact that the deceased chose it as a place of refuge from the storm and that he was injured at this place does not prevent recovery. The act of seeking and obtaining shelter arose out of, that is, was within, the scope or sphere of his employment and was a necessary adjunct and an incident to his engaging in and continuing such employment. Obtaining shelter from a violent storm in order that he might be able to resume work when the storm was over was not only necessary to the preservation of the deceased's health, and perhaps his life, but was incident to the deceased's work, and was an act promoting the business of the master. L. R. A. 1916A, 348.

"See, also, Richards vs. Indianapolis Abattoir Co., 92 Conn. 277, 102 Atl. 605, where it is said that:

"'The plaintiff "was injured while on duty in his working hours, when waiting for an opportunity to continue his service of employment. The accident occurred when the plaintiff was at a place where he might reasonably be. There was no turning aside upon his part, no attempt to serve ends of his own".'"

In the Wiggins case, supra, where the decedent was working on a metal road grader, compensation was claimed on the ground that the metal road grader attracted lightning, the court holding that it had a right to take judicial notice of the well-known laws of nature and a recognized scientific fact, quoted extensively from an article by one H. H. Cochrane, an electrical engineer, arriving at the conclusion that scientific authority did not support the theory that the presence of the metal road grader could have had any perceptible influence on the lightning and did not tend to increase the hazard of the decedent's employment; and for this reason it held that the death did not result from an accident arising out of the employment. It states, though:

"Because projecting objects may occasion the atmospheric breakdown, trees, tall buildings and other projecting objects are more likely to be struck by lightning than other less prominent objects, and it is upon this theory, we think, that compensation for injury from lightning was allowed in State ex rel. People's Coal and Ice Co. vs. District Ct., 129 Mich. 502, and in Andrew vs. Failsworth Industrial Soc. (1904), 2 K. B. 32, and denied in Klawinski vs. Lake Shore M. & S. R. Co., 185 Mich. 643, in Koenig vs. Industrial Commission, 159 Wisc. 646, and in Kelly vs. Kerry County Council, 42 Ir. L. T. 23."

In the Box case, the ground of the decision was that the risk to a workman of injury from a bolt of lightning which struck a tree that he was engaged in sawing down was greater than to one not so engaged.

Inasmuch as this view has regard not to the increase of danger from lightning generally but only to its increase from the particular bolt dealt with, the ground is somewhat different from that made the basis of the decisions awarding compensation in the other cases.

We prefer to place our decision on the ground that the presence of Gasca under the tree increased the danger of his being struck by lightning because the tree was more apt to be struck rather than that his presence increased the danger of his being injured by the particular bolt which did strike the tree.

## II.

The considerations that differentiate the lightning cases where compensation was allowed from those where it was disallowed, also differentiate, we think, the McCarter case from the former. The fragments from an exploding shell are not more likely to go in one direction than another or to strike one object than another.

In that case, therefore, there was no connection whatever between the employment and the accident other than the bare fact that the party injured was located where he was.

Lightning, though, has more regular habits than have the flying fragments of an exploding shell, and where the situation of a workman because of his employment is such as to increase the danger of being struck by lightning, this is sufficient causal connection between the employment and the accident to justify holding that the accident arose out of the employment.

## III.

Defendant's counsel seek to differentiate this case from the Box and Madura cases by the circumstance that in the Box case the decedent was actually at work and in the Madura case he had been directed by his foreman to stay in the park and get under a tree; whereas in the instant case the accident happened during the lunch hour when Gasca was free to go where he chose.

We do not think this consideration controls. It is admitted in the case that the accident occurred a short time before or just as he was about to return to work, that the tree under which he sought shelter was near the spot where he was working, that this tree was the most convenient shelter available, and that there was no other shelter.

We think that Gasca's seeking shelter was incidental to his employment: If his duty to his employer did not require him to do this it at least permitted him to do it, and his doing it did not constitute a break in the employment; nor do we think that the suspension of work in order to eat lunch constituted a break in the employment.

We find in "Workmen's Compensation Acts," a Corpus Juris treatise by Donald J. Kiser, published by the American Law Book Company and intended to constitute a part of Corpus Juris, on page 83 the law laid down as follows:

"Where the employee is injured while doing something not strictly within his obligatory duty, but which is incidental thereto, he may be entitled to compensation. Of this character are injuries sustained while the employee is preparing to begin work after arriving at the employer's premises, or preparing to leave when the work is over, or is going to punch a time clock, or to get his pay, or is going to lunch, or during the lunch period, or while otherwise temporarily absent from his work by permission."

Rehearing refused.