Merrill v. Penasco Lumber Co., 27 N. M. 632

(No. 2625.    Jan. 13, 1922.)

## MERRILL v. PENASCO LUMBER CO. et al.

### SYLLABUS BY THE COURT

(1)    Actual dependency within the meaning of the Workman's Compensation Act is a question of fact, to be determined by the circumstances of each case.        P. 633

(2)    Legal liability to support does not of itself prove dependency.        P. 635

(3)    Failure of a husband to support his wife and children for a considerable time prior to the accident which caused his death does not of itself prove that they were not actual dependents.        P. 635

(4)    An accident to a workman employed in a forest, caused by a falling tree, and resulting in his death, under the circumstances of this case, arose out of his employment within the meaning of the Workman's Compensation Act.
P. 636

Appeal from District Court, Otero County; Ed Mechem, Judge.

Proceeding by Ida B. Merrill against the Peñasco Lumber Company, employer, and the Western Indemnity Company, insurer, for compensation under the Workman's Compensation Act for the death of plaintiff's husband, J. M. Merrill. Judgment for plaintiff, and defendants appeal. Affirmed.

W. H. Winter and Winter, Goldstein, Miller, McBroom & Scott, all of El Paso, Tex., for appellants.

Lee R. York, of Alamogordo, for appellee.

### OPINION OF THE COURT

DAVIS, J. In March, 1920, J. M. Merrill was an employee of the Peñasco Lumber Company, working in the woods in the Sacramento mountains as a teamster. On the 3d of that month he was driving a team skidding logs. It was a very windy day, one of the witnesses describing the wind as a "fierce gale." Many trees blew down, not an uncommon occurrence in those woods. One of these trees in fall-

ing struck Merrill and killed him. No one was working on the tree, and his employer in no way caused its fall. Merrill was a married man with three children. This proceeding was commenced by the widow on behalf of herself and children to recover the compensation for his death allowed by the Workman's Compensation Act. Judgment was rendered in her favor.

[1] Appellants contend that the widow and children were not actual dependents upon Merrill, and consequently not entitled to compensation. The argument is that the burden was upon them to show actual dependency under chapter 83, § 12 (J) 2, Laws 1917, and that they failed in the proof, and indeed proved the contrary, since it was shown that at the time of his death Merrill was not actually supporting them. The statute provides that a widow, if living with the deceased, or legally entitled to be supported by him, and actually dependent upon him, is entitled to compensation under the act. Appellee and deceased were living separate and apart at the time of his death, but she was still legally entitled to his support. She was without income of her own. She had done washing, ironing, and canvassing, had received a small sum of money from the sale of a piece of property, and had had some assistance from her father and uncles. From these sources she had supported herself and her children.

While the statute uses the word "actually" as limiting the word "dependent,"this can mean nothing more than that the widow must have been dependent in fact as well as in law. In a sense every wife and child is legally dependent upon the husband and father, and there may in some instances be a distinction between such legal dependency and the dependency in fact contemplated by the statute. Courts have met with considerable difficulty in laying down a general rule as to who are actual depend-

ents under such a statute, and the rules established
are of a negative rather than a positive character.
It seems to be well settled by authority that the
existence of a marriage with consequent liability to
support does not of itself prove actual dependency,
and instances easily come to mind of married women
who are not actually dependent upon their husbands
for support.   Many statutes create a presumption
of dependency in favor of certain classes, but ours
does not, following in this respect the original Eng-
lish act.   But just as the existence of the marital
status does not of itself prove dependency, so the
lack of actual support by the husband does not of
itself negative dependency.   The failure to support
is only one circumstance for consideration.   The rea-
sons for it, the length of its continuance, the mu-
tual attitude and means of the parties, the probable
resumption of duty, and other similar matters may
have a distinct bearing on the subject.   If depend-
ency were determined only by the fact of contribu-
tion to support, a wife and children might be de-
pendent one week and cease to be the next accord-
ing to the caprice of the husband and father.   Such
a theory lacks support from authority.   In Parson
v. Murphy, 101 Neb. 542, 163 N. W. 847, L. R. A.
1918F, 479, a mother was held to be dependent on
her son although he had not actually supported her
and was not contributing to her support at the time
of his death.   He had written five months before
that he would come and live with her and support
her, but for reasons beyond his control did not do so.
The court said:

"Defendant's argument on this point cannot be sustained.
We believe the statute is susceptible of an interpretation that
more nearly accords with the main purpose of its enactment.
The act is one of general interest, not only to the workman
and his employer, but as well to the state, and it should be
so construed that technical refinements of interpretation will
not be permitted to defeat it.   Among its objects are these:
That the cost of the injury may be charged to the industry
in which it occurs; the prevention of tedious and costly liti-

gation; a speedy settlement between employer and employee; and to prevent dependent persons from becoming a public burden. * * * It is not shown that the widow's son made any contributions to her support. But in any event this feature is not important, in view of our holding that the question of contribution ,as it is contended for by defendants, is not controlling * * *

"That plaintiff's son was capable of earning the wages usual to his employment affirmatively appears. * * * But for the accident he would now, in human probability, be a wage-earner, and thus be in a position to supply plaintiff in pursuance of his promise. It is always presumed, until overcome by proof, that a man will do his duty. It cannot be known, and will not be presumed, that Nels Parson, if living, would be unmindful of his filial duty, with or without promise, to support his aged and dependent parent. The question of legal liability to support does not of itself determine the question at issue."

In Re Carroll, 65 Ind. App. 146, 116 N. E. 844, the court said:

"Among the elements that are indicia of a state of dependency are an obligation to support, the fact that contributions have been made to that end, that the claimant in any case is shown to have relied on such contributions and their continuing, and the existence of some reasonable grounds as a basis for a probability of their continuance, or of a renewal thereof, if interrupted. We would not be understood as indicating that all these elements must exist in each case, in order that there may be a state of dependency."

In Sweet v. Sherwood Ice Co., 40 R. I. 203, 100 Atl. 316, the doctrine was recognized that, while the obligation to support does not of itself determine dependency yet, when such legal obligation is coupled with a reasonable probability that it will be fulfilled, it constitutes one of the tests of dependency. Case notes upon this question will found in L. R. A. 1918F, 483, and Ann. Cas. 1918B, 749.

[2, 3] Coming now to the particular facts in this case, we find that Merrill and his wife separated in March, 1918, Merrill remaining in the vicinity for a short time and then going to Kentucky. Before leaving he arranged with local merchants to furnish her with groceries and dry goods, paying the bills

thus contracted up to about July, 1918. He sent her money on two occasions. After this he became sick, and wrote his sister saying he was unable to work, and to send him money. Shortly before the employment in which he met his death he returned to the place of his wife's residence, gave her a small sum of money, and told her he was going to support her and the children, and that he did not want her to work longer. She could reasonably expect this promise to be kept, and there was probability that her expectations would be realized. Without the temporary aid from the proceeds of the sale of her property, and without the voluntary assistance of her family, her ability to support herself and children may be doubted. In spite of his failure to contribute to her support for a considerable period, and of the fact that she was able to maintain herself and her children in some fashion through her own efforts, and with the assistance of her relatives, we conclude that, under the circumstances shown, she and they were nevertheless actual dependents upon him at the time of his death within the meaning of the statute.

[4] Appellants further contend that the accident which caused Merrill's death did not arise out of his employment and argue that the tree fell through no act or negligence of the employer, but because of a violent storm, for which no human agency could be responsible, and it is argued that the employee was in no greater danger from such accident than were the other employees or the general public. If we were dealing with a common-law action for personal injuries to an employee, the negligence of the employer would be the first subject of inquiry, for it would be the basis of the liability. But no such question arises under the Workman's Compensation Law. The economic theory of its enactment is to place upon the industry instead of upon the individual the loss resulting from injuries to its em-

Merrill v. Penasco Lumber Co., 27 N. M. 632

ployees, and the loss is to be thus shifted in the case of all accidents arising out of and in the course of the employment. It is a new liability created entirely by statute, and having no relation in principle or effect to that which arose at common law for injuries, or under statutory provisions covering death by wrongful act.

The words "arising out of" the employment are found in the original English act and are in the statutes of most of the states. The question as to whether a particular accident falls within their scope has been the subject of frequent decisions. Certainly the employment must have had some causal connection with the accident; the accident must result from a risk reasonably incident to the employment, or the injury cannot be said to arise out of it. A risk common to the public generally, and not increased by the circumstances of the employment, would not fall within this language of the act. A risk peculiar to the industry certainly would. Between the two extremes comes the gradation in instances which are more difficult of solution as they reach middle ground.

The rule is illustrated by the decisions in cases where the death of the employee was caused by lightning. Without attempting to lay down an absolute rule, for each case must be determined according to its own facts, the authorities seem to hold that, if the deceased by reason of his employment was exposed to a risk of injury by a storm or other action of the elements greater than that to which the public was subject, or his employment necessarily accentuated the natural hazard, the injury arose out of the employment. Thus in State v. District Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344, dealing with the death by lightning of the driver of an ice wagon whose duties required him to be out of doors at all times and in substantial

disregard of weather conditions, and in holding that such an accident arose out of his employment, the court said:

"If the deceased was exposed to injury from lightning by reason of his employment, something more than the normal risk to which all are subject, if his employment necessarily accentuated the natural hazard from lightning, and the accident was natural to the employment, though unexpected or unusual, then a finding is sustained that the accident from lightning was one 'arising out of employment.' An injury, to come within the Compensation Act, need not be an anticipated one; nor, in general, need it be one peculiar to the particular employment in which he is engaged at the time."

A general discussion of the principle applicable will be found in 28 R. C. L. 796, and many cases are collected in the notes to Central Ill. Public Service Co. v. Industrial Commission, 13 A. L. R. 974.

Examining the facts of the case now before us, we find that the accident occurred in the course of lumbering operations in the Sacramento montains. It needs no proof to show that the mountain regions of New Mexico are subject to sudden and violent storms. It is a matter of common knowledge that the blowing down of trees in such storms is not an unusual occurrence, and, if proof were necessary as to the particular region where this accident occurred, it is found in the evidence. The risk of injury from the falling of such trees is one naturally incident to an employment in that industry, and one which both employer and employee must anticipate. Their work is necessarily in the woods among the trees, and usually far from considerable habitations. The employees from the very conditions under which they must work are subjected to this risk in a much greater degree than the general public. Their work is carried on in a place peculiarly subject to such danger. Under the principle already pointed out,

the accident which is the basis of this proceeding did arise out of the employment.

The decision of the district court was correct, and is affirmed, and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.