## MOBILE & O. R. CO. v. INDUSTRIAL COMMISSION OF ILLINOIS et al.

District Court, E. D. Illinois.   June 7, 1928.

No. 2204.

David S. Lansden, of Cairo, Ill., and L. R. Stewart, of Murphysboro, Ill., for petitioner.

George R. Stone and A. L. Fowler, both of Marion, Ill., for respondent Emma Habermehl.

LINDLEY, District Judge.  Emma Habermehl, widow of Benard Habermehl, instituted and prosecuted to an award against the petitioner, the deceased's employer, a claim for compensation under the Illinois statute (Smith-Hurd Rev. St. 1927, c. 48, §§ 138–172) alleged to be due her because of the death of her husband as a result of injuries incurred at the time of a tornado in Murphysboro, Illinois, in March, 1925.  The circuit court of Jackson county, Illinois, granted certiorari upon said award, and thereupon petitioner procured removal of the cause to this court.  The question submitted is whether, in the facts appearing in the record, there is sufficient evidence to sustain the award of the Industrial Commission.

On March 18, 1925, an extraordinarily severe tornado traveled across southern Illinois.  Murphysboro, a city of about 12,000 people, lay within the path of the storm.  Witnesses estimated that about 60 per cent. of the area of the city was affected, and that about 60 per cent. of the inhabitants were subjected to the perils of the tornado; 235 people were killed, and about 1,200 injured.  Buildings of all descriptions were demolished or damaged.  The railroad locomotive and repair shops of the Mobile & Ohio Railroad Company, of suitable heavy brick construction, were practically destroyed.  In the shops at the time there were employed 261 men, of whom 17 were killed and 42 injured; 101 other employees were not then working.  Petitioner insists that the proof is that of these 7 were killed.  The deceased, Benard Habermehl, was foreman

of the blacksmith shop, which was connected with the other buildings comprising the entire shop establishment. Apparently all parts thereof were under the same roof, but separated by brick partition walls. Fourteen or 15 men were employed in the blacksmith shop, and of them none was killed, except Habermehl. When the tornado struck, he ran from the blacksmith shop into a small machine shop, and there the brick from the walls, timber, and the fan platform and fan fell upon him and caused his death.

The Illinois Compensation Act provides for compensation to employees "for accidental injuries sustained by any employee arising out of and in the course of the employment." It is not greatly at variance with similar statutes generally enacted within recent years. This court is bound by the construction of the Supreme Court of Illinois, but the facts in the present case are so at variance with those of any of the adjudicated cases in Illinois that determination of the question here involved necessitates also an examination of the reasoning of other courts and the history of the legislation, for further light sufficient to furnish the court a full and satisfactory basis for the solution of the present problem.

Compensation Acts in general substitute a new cause of action, a new procedure, for common-law rights and liabilities in case of injuries to employees. The intention was to secure workmen and dependents against becoming objects of charity, by making a reasonable compensation for all such accidental calamities as are incidental to the employment. Under such acts injuries to employees are to be considered no longer as results of fault or negligence, but as the products of the industry in which the employee is concerned. Compensation for such injuries is, under the theory of such statutes, like any other item in the cost of production or transportation, and ultimately charged to the consumer. See 28 R. C. L. p. 714. Such laws are the products of the development of the social and economic idea that the industry that has always borne the burden of depreciation and destruction of machinery shall also bear the burden of repairing the efficiency of human beings, without the existence of which the industry could not exist. The changed social, economic, and governmental ideals of the time, as well as the problems which the changes have produced, must logically enter into the consideration, and become influential factors in the settlement of problems of construction and interpretation. The law substitutes for lia-

bility for negligence an entirely new conception; that is, that if the injury arises out of and in the course of the employment, under the doctrine of man's humanity to man, the cost must be one of the elements to be liquidated and balanced in money in the course of consumption. In other words, the theory of the law is that, if the industry produces an injury, the cost of that injury shall be included in the cost of the product of the industry. Hence the provision that the injury must arise out of and in the course of the employment.

The theory of the act calls logically for a liberal construction of its provisions, but there are reasonable limitations, and the operation of the law should not be stretched by any extraordinary principle to the extent of making the employer the insurer of the safety and well-being of the employee. There must be, arising from the employment in the industry, some fact, some act, some occurrence, that produces the injury, The act is not to be considered as a substitute for disability or old age compensation.

The words themselves, "arising out of the employment," would seem to be clear, yet they have been provocative of much discussion in various courts. The Massachusetts court's discussion (McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306), of the principle involved is as enlightening as one may find. The court there says that the injury, in order to warrant the payment of compensation, "must both arise out of and also be received in the course of the employment. Neither alone is enough. * * * An injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is a * * * causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * If the injury can be seen to have * * * been contemplated by a reasonable person familiar with the whole situation, * * * then it arises 'out of' the employment. * * * The causative danger must be peculiar to the work and not common to the neighborhood. * * * It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

The Supreme Court of Illinois, in discussing an asserted liability in Central Illinois Public Service Co. v. Industrial Commission et al., 291 Ill. 256, 126 N. E. 144,

13 A. L. R. 967, says: " 'It was not the intention of the Legislature to make the employer an insurer against all accidental injuries which might happen to an employee while in the course of the employment, but only for such injuries arising from or growing out of the risks peculiar to the nature of the work in the scope of the workman's employment or incidental to such employment, and accidents in which it is possible to trace the injury to some risk or hazard to which the employee is exposed in a special degree by reason of such employment. Risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment are excluded.' * * * 'There must be some causal relation between the employment and the injury. It is not necessary that the injury be one which ought to have been foreseen or expected, but it must be one which after the event may be seen to have had its origin in the nature of the employment.' * * * It is held generally in this country that in order that an injury may be said to arise out of the employment the risk of being injured by the elements must be one incidental to the employment and not common to the public. Regardless of the nature or the fact of such employment or the risk being common to the general public, *the employee must have been exposed to it in a greater degree than other persons by reason of his employment.* Risks to which all persons similarly situated are equally exposed and not traceable in some special degree to the particular employment are excluded."

There the deceased was employed in an ice-manufacturing plant during the course of a tornado, and was amongst the steam pipes and ammonia coils, where his duties led him. The storm broke the coils and the pipes, and the escaping fumes and steam were such that his death occurred as the result thereof. The court, applying the principles above quoted, allowed a recovery. The words in the following quotation apparently show why the court so held: "Deceased at the time the storm broke was engaged in assisting and directing the closing up of the plant of defendant in error. These duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes, should the building be destroyed by storm. The evidence shows that the ammonia fumes and scalding steam contributed most largely to the injuries which caused his death. We are therefore of the opinion that there were in the circumstances of the employment of the deceased risks of being injured by the storm not common to the public in that vicinity, and the circuit court therefore erred in setting aside the award."

The court found that the circumstances of the employment, which required the injured party to be amongst the ammonia coils and steam pipes, which were used in the industrial operation of the plant, accentuated his risk over that of the public. The hazard of his safety was greater because of the fact that he was necessarily amongst pipes, which in the course of events might become a source of danger. It would seem that the court could have come to no other conclusion than that there was liability, and that the industry, which produced the extra hazard, should bear the cost of the loss of life of one engaged in its operation. This is directly in line with the theory and philosophy inspiring the enactment of the legislation.

The respondent contends that the cited case is decisive of the present case; that the brick walls of the shops produced an extra hazard, not common to the public; that there was a causal relation between the injury and the employment. The deceased was not in his place of employment. He had, in the emergency, run into an adjoining room. No penalty accrues to him because of that fact, however. The mere fact that none of his associate employees in the blacksmith shop was killed may tend to show that the danger was less in that room than in the room to which the deceased ran; but the question is not whether the deceased acted erroneously in a case of emergency, but whether his injury arose out of his employment, whether the necessary causal relation existed, and whether there was a greater hazard for him because of his employment than existed for the general public.

The evidence shows that the killed and injured in the plant constituted a trifle over 22 per cent. of the whole number there employed. It was estimated that 7,200 people were in the path of the storm, and that of these 1,435 were killed or injured, or a total percentage of just under 20 per cent. How many of the 7,200 people were in the open and how many were in buildings does not appear. Whether there was any greater risk for the people who were within buildings than for those who were in the open is not satisfactorily answered, unless common knowledge would tell us that the danger from falling débris within a building being demolished is greater than that which comes from débris being thrown through the open air. The percentage of people killed in the

shop was apparently twice the percentage of those killed outside of the shop; but how many of those who were outside of the shop were in other buildings, and how many were on the streets, we cannot know.

The court is of the opinion that under these facts there is no causal relation between the employment and the injury; that there is no evidence in the record that will warrant a finding that the industry caused this injury, or that it accentuated the risk of the deceased over that of the public. The slight difference in comparison between the 20 per cent. outside of the shop and the 22 per cent. inside of the shop, the uncertainty of the location of the members of the public who were killed, and the other facts are so uncertain and speculative in character as to afford no evidence whatever that the deceased's employment in the particular industry had anything to do with the injury. Apparently the Supreme Court of Illinois, in the Kilgore Case, based its finding upon a causal relation between the injury and the employment solely upon the fact that there was additional hazard in the employment of Kilgore arising from the fact that his duties took him into places where increased hazards existed; and apparently, but for that fact, there could have been no recovery. There was no peculiar exposure of the deceased in the present case. He was subject to no increased dangers from the elements. There was no accentuated risk arising out of the employment. The courts in such cases have uniformly denied relief. See Thier v. Widdifield, 210 Mich. 355, 178 N. W. 16; Wiggins v. Accident Bd., 54 Mont. 335, 170 P. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164; Klawinski v. Lake Shore & M. S. R. Co., 185 Mich. 643, 152 N. W. 213, L. R. A. 1916A, 342; Hoenig v. Industrial Commission, 159 Wis. 646, 150 N. W. 996, L. R. A. 1916A, 339; Griffith v. Cole Bros., 183 Iowa, 415, 165 N. W. 577, L. R. A. 1918F, 923; Roach v. Kelsey Wheel Co., 200 Mich. 299, 167 N. W. 33; Pyper v. Manchester Lines, 2 K. B. (Eng.) 691, 115 L. T. N. S. 406, 32 Times L. R. 723.

In Carey v. Industrial Commission, 181 Wis. 253, 194 N. W. 339, the court agreed that the law was properly interpreted by the Supreme Court of Illinois in the Kilgore Case, but held that, where an employee was killed in the course of his employment, but while seeking a place of refuge in an emergency, as did the deceased in the present case, and was killed by reason of a violent or unprecedented storm, the barn in which he had sought refuge being removed from its foundation, and the falling débris causing his injuries, there was no liability for the reason that the employment neither caused nor contributed to his injury. A similar case is that of Gale v. Krug Park Amusement Co., 114 Neb. 432, 208 N. W. 739, 46 A. L. R. 1213.

Apparently the Supreme Court of Illinois has gone farther than is necessary, in order to deny compensation in the present case, in Consumers' Co. v. Industrial Commission et al., 324 Ill. 152, 154 N. E. 423, 53 A. L. R. 1079, where compensation was denied an employee whose hands were frozen while shoveling coal in the yards of the employer. The court there found that the employee was not exposed to a special or peculiar danger from the elements, and that his risk was not accentuated over that of the public. The injury here accrued from a force majeure, which human diligence or industry can neither foresee nor prevent. Inasmuch as human industry has nothing to do with it, it cannot be made to bear the burden. In answer to the suggestion that the employee would not have been injured if he had not been at the place of employment, it has been said that in the same causative sense, if he had never come into being, he could not have been injured, and that the same argument might be made for a claim against one who sold a carriage to one who was struck by lightning while riding in it.

Respondent relies largely upon the case of Reid et al. v. Automatic Electric Washer Co., Inc., et al., 187 Iowa, 964, 179 N. W. 323. There the injured person was foreman in his department, and it was a part of his duty to close the windows in the case of storm. The president of the company, seeing an approaching storm, warned his employees of its approach, and Reid went to close the windows. He was killed by débris falling from a higher part of the building, and a recovery was allowed. The court seems to have been of the opinion that the fact that his duties called him to the place where there was special danger from storm produced a causal relation between the employment and the injury. As one of the judges, specially concurring said: "The test is not whether the injury was caused by an act of God, but is whether the one injured was by his employment specially endangered by the act of God, be it lightning or windstorm. This decedent was more exposed to such injury than mankind generally. If an approaching storm seemed threatening, it was his duty to close windows. That might keep him in the path of the storm after his fel-

low employees had left the building and gotten out of the path of the storm. I base my concurrence on the nature of the employment being one that forced the employee to be specially subject to the danger from certain acts of God."

In the present case there is no evidence that the nature of the employment was one that forced the employee to be specially subject to the danger of certain acts of God as in the case cited. In the case of Merrill v. Penasco Lumber Co. et al., 27 N. M. 632, 204 P. 72 relied upon by the respondent, the court found that the employee was subjected to a special and unusual risk by the very nature of his employment working amidst the trees in the forest, where he was killed by a falling tree. This reasoning is in line with what we have said.

Bearing in mind that it was the intent of all such legislation as that under consideration to put the cost of human injuries upon industry only where a causal relation between the two exists, but not to provide for pensions, that the public generally was subjected to the risks which caused the deceased's death, that members of the public were injured in substantially the same percentage as employees of the petitioner, and that there is no causal relation between the injury and the employment, it follows that, under the rules enunciated by the Supreme Court of Illinois, this award cannot stand.

The motion to quash the writ will be denied, and the award of the Industrial Commission of Illinois will be and is reversed and vacated, at the costs of the respondent Habermehl.