131 P.2d 276

### SALLEE v. CALHOUN et al.
### No. 4719.

Supreme Court of New Mexico.
Nov. 17, 1942.

Frank O. Westerfield, of Albuquerque, for appellants.

Joseph L. Smith, of Albuquerque, for appellee.

BRICE, Chief Justice.

The question is what amount of compensation, if any, the appellee is entitled to

under the Workmen's Compensation Act because of the death of his minor son, who died from accidental injuries received in the course of his employment by appellant Calhoun, hereafter referred to as appellant.

Appellants have attacked six findings of fact made by the court, all in substance and to the effect that appellee and his wife were partially dependent upon deceased for support.

The deceased was twenty years old at the time of his death. Since the age of twelve he had worked to assist in the support of his father and mother, and was so assisting in their support at the time of his death. The fact that his father was earning $70 per month at the time of his death did not conclusively determine the question against appellee. It depends upon whether deceased had actually contributed to their support, and whether they relied upon such earnings in whole or in part for a livelihood. Appellee and his wife may have lived on the earnings of the father in some fashion, but his earnings must have been more than $70 a month for us to hold as a matter of law that they were not partially dependent on their son, who, from the evidence, we believe was contributing most, if not all, of his earnings to the support of the family of which he was a member. Barney Cockburn & Sons v. Lane, 45 N.M. 542, 119 P.2d 104.

We are of the opinion that dependency not only may be inferred from the testimony, but also that the appellee and his wife relied upon the assistance given them, notwithstanding it was furnished freely and without request from them.

It is argued that the compensation should be reduced to fifty percent of that to which appellee would ordinarily be entitled, because of the failure of deceased to use certain alleged safety devices provided by the employer. A portion of Sec. 156-107, N.M. Sts.1929, as amended by Sec. 5, Ch. 92, N.M.L.1937, is as follows:

"In case an injury to, or death of a workman results from his failure to observe a statutory regulation appertaining to the safe conduct of his employment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under this act shall be reduced by fifty per centum."

The appellants requested several findings, to the effect that two valves placed in the metal pipe to prevent the flow of gasoline, were safety devices which the deceased was required under the statute to keep closed until the nozzle of the hose was placed within the tank to be filled, and "that the injuries and death of William Roy Sallee were the direct and proximate results of his refusal and failure to use said safety devices provided by the employer". These requested findings the trial court refused to adopt. At appellants' request it found certain facts, which are substantially supported by the evidence. Indeed, the facts found are undisputed and they fairly state the manner and cause of deceased's death. The substance of the

material parts of these findings is as follows:

The deceased had been employed by appellant for about four months. During the month preceding his death he had been operating a tank-truck, transporting gasoline from a storage tank, from which he filled the tank-truck by pumping gasoline therefrom through a pipe and hose. The pump was electrically operated.

There were two valves in the pipe through which the gasoline was pumped from the storage tank; when closed these valves prevented gasoline from flowing through the pipe. The usual procedure for filling the tank-truck, regarding which deceased had been instructed, was, (1) to remove the cap from the tank-truck, (2) place the nozzle of the hose in the opening, (3) open the valves, (4) start the pump motor by turning the electric switch. It is said that if this procedure had been followed the deceased would not have been injured. On several occasions the deceased had filled the tank-truck and had followed the procedure stated.

On the 17th day of November, 1941, the deceased came to the storage tank for gasoline. After the accident, hereinafter mentioned, the two valves were found open, but whether opened by deceased or another is not known. There were circumstances which would have authorized a finding that deceased had turned the valves; but though requested, no such finding was made by the trial court. While the deceased held the hose in his hands, without removing the cap, he turned the switch that started the operation of the pump, with the result that he was covered with gasoline, which was ignited from the electric switch, burning him so seriously that he died shortly thereafter. If the valves had been closed at that time, the gasoline would have circulated and returned to the storage tank and no injury would have resulted. But the deceased must have known that if the valves were open the starting of the motor would pump the gasoline through the hose and on him or on the ground, and such a grossly negligent act, to say the least, was improbable. The court was justified in concluding that some one other than the deceased had opened, or had forgotten to close, the valves. Deceased stated after his injury that it was his fault; that he had not "removed the cap," but he said nothing about opening the valves.

■ But, as we view the circumstances, it was not the fact that he opened the valves at the wrong time (if he did) that was the proximate cause of his death. The valves might have been opened and no harm would have resulted if the hose had been in or out of the tank. The proximate cause of deceased's death was his negligent act of pulling the switch which started the pump while the hose was held by him, unconnected with the tank-truck.

■ The district court did not abuse its discretion in allowing attorney's fees.

■ The judgment of the district court should be affirmed with costs, and an award

of $200 allowed appellee for attorney's fees for the defense of the appeal in this court.

It is so ordered.

SADLER, MABRY, and BICKLEY, JJ., concur.

ZINN, J., did not participate.