309 P.2d 225

**W. G. FERRIS and Laura Ferris, as dependent parents of Billy Max Ferris, Deceased, Plaintiffs-Appellees,**

v.

**THOMAS DRILLING COMPANY, a corporation Employer, and United States Fidelity and Guaranty Company, a corporation, Insurer, Defendants-Appellants.**

No. 6153.

Supreme Court of New Mexico.
March 28, 1957.

Cowan & Leach, Hobbs, for appellants.
Neal, Neumann & Neal, Carlsbad, for
appellees.

LUJAN, Chief Justice.

Billy Max Ferris died from an accident
arising out of and in the course of his em-
ployment by appellant-employer. He was
then aged twenty years, and was living
with his father and mother, appellees
herein. The sole question in this appeal
concerns the status of appellees as actual

partial dependents of decedent at the time of his death.

Section 59-10-12 provides as follows: "* * * (j) The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act.

* * * * * *

"4. A parent or grandparent only if actually dependent, wholly or partially, upon the deceased."

Section 59-10-18 provides:

"* * * 7. If there be neither widow, widower, nor children, then to the father and mother, or the survivor of them if dependent to any extent upon the workman for support at the time of his death, * * *"

It was stipulated at the trial that the appellant, Thomas Drilling Company, is a corporation, and at all times material was engaged in the business of drilling oil wells in New Mexico; that United States Fidelity & Guaranty Company was its insurer under the Workmen's Compensation Act; that on August 20, 1955, Billy Max Ferris was employed by Thomas Drilling Company as a derrick man, and on that date received an injury arising out of his employment from which he died in a few days; that all hospital and medical expenses incident to his hospitalization and prior to his death were paid by the insurance company; that the sum of $250 for burial expenses was tendered by the insurance company but was refused prior to filing this suit; that the deceased at the time of his death was earning an average weekly earning of $106.40 a week; that he was unmarried and died without issue; and that the only question for determination is the dependency.

The record discloses that between September 1, 1953 and July 21, 1955, the following sums of money, earned by the deceased, were deposited in the Carlsbad National Bank of Carlsbad, New Mexico, in the joint names of deceased and his mother.

| | | |
|---|---|---|
| September 1, 1953 | — | $700.00 |
| July 20, 1954 | — | 280.88 |
| August 8, 1954 | — | 300.00 |
| August 16, 1954 | — | 265.00 |
| July 12, 1955 | — | 212.33 |
| July 21, 1955 | — | 168.61 |
| | Total | $1926.82 |

The following sums of money were deposited in said account, which was supplied by the father, mother and older brother, by his mother.

| | | |
|---|---|---|
| October 10, 1953 | — | $ 75.00 |
| October 27, 1953 | — | 35.00 |
| November 9, 1953 | — | 50.00 |
| December 8, 1953 | — | 30.00 |
| March 23, 1954 | — | 75.00 |
| April 8, 1954 | — | 100.00 |
| April 12, 1954 | — | 35.00 |
| April 19, 1954 | — | 5.00 |
| April 26, 1954 | — | 25.00 |
| May 10, 1954 | — | 140.00 |
| May 17, 1954 | — | 5.00 |
| May 24, 1954 | — | 30.00 |
| May 25, 1954 | — | 15.00 |
| June 4, 1954 | — | 20.00 |
| June 26, 1954 | — | 20.00 |
| July 6, 1954 | — | 30.00 |
| July 6, 1954 | — | 51.44 |
| September 15, 1954 | — | 60.00 |
| December 23, 1954 | — | 15.00 |
| January 10, 1955 | — | 130.00 |
| | Total | $946.44 |
| | Grand Total | $2873.26 |

The mother of decedent transferred, on September 9, 1955, the sum of $289.24 from the joint account to her separate account, thus leaving the total amount contributed by the father, mother and older brother to $657.20 as against $1,926.82 contributed by the deceased.

Against this account there was drawn by the deceased and his mother the sum of $725.91, for rent, groceries, light, clothing and other family expenses. The rest of the money was used by the deceased to pay for his schooling and expenses incidental thereto, and his clothing.

The appellants contend that the court erred in (1) denying its motion to instruct the jury to return a verdict in their favor at the close of the evidence; (2) in submitting the issues of dependency to the jury when in view of the undisputed evidence the question of partial dependency was one of law; and (3) that there is insufficient evidence within the record to support the findings by the jury that the plaintiffs' parents were actually partially dependent upon the deceased at the time of his death under the provisions of the Workmen's Compensation Act of New Mexico.

A determination of appellants' contention that the trial court committed error in denying their motion for a directed verdict will also dispose of the third ground of error, which is that there is insufficient evidence in the record to support the findings by the jury that appellees were actually partially dependent upon the deceased at the time of his death.

In consideration of motion for directed verdict the court must view evidence of plaintiff in most favorable aspect, indulging all reasonable inferences to be drawn from plaintiff's evidence, and disregarding all unfavorable testimony and inferences. Smith v. Ferguson Trucking Co., 58 N.M. 779, 276 P.2d 911. And, only where there is no evidence for jury to pass upon or where evidence is of such character that the court, in exercise of its sound judicial discretion, would be called upon to set aside verdict and grant a new trial if jury found in favor of one side rather than the other, is it right and duty of trial court to direct jury to find according to view of the court. The appellants having denied that appellees, at the time of their son's death, were partially dependent upon him for support, in view of the evidence introduced, the question of dependency was properly submitted to the jury. Sanchez v. Gomez, 57 N.M. 383, 259 P.2d 346.

Mrs. Laura Ferris, mother of decedent, testified that her son turned all of his earnings to her and that she put the money on deposit in the Carlsbad National Bank; that she and her son drew checks on the account; that she made deposits to the account from funds of herself, husband and

older brother while her son was in college; that part of the money so deposited went for his education, and that when she needed some money for family expenses she would use it; that she drew checks to pay rent, groceries, clothing, lights and other family expenses; that her son drew checks to pay family bills; that she relied upon receiving his checks to deposit in the bank for his education and family purposes; and that she depended upon him, during the time he was working, and at the time of his death, to help the family out.

W. G. Ferris, father of decedent, testified that he was actually partially dependent upon his son to a certain extent; that he had been off of work quite a bit because he had been sick for the last four years, and that he was off at the time of the trial, but was working at the time of his son's death; that he was earning $4,800 per year. The record further disclosed that the father's bank account was meager.

John Pena, an auditor at the Carlsbad National Bank testified, that the bank account of W. G. Ferris was quite insufficient, it was very low; that from June 9, 1953 to April 19, 1954, the most he ever had was $100, that there were six different times during that period that the account was less than $5 and thirteen times between that period when the account was less than $10; that it was a very meager account; and that the most he ever had between August 1954 to November 1954, when the account was closed, was $93.88.

The evidence, in our judgment, was sufficient to establish that appellees were actually partially dependent for support upon deceased at the time of his death.

As to the second ground of error, we hold, that the court did not err in submitting the issue of dependency to the jury under the evidence adduced at the trial.

Actual partial dependency may exist even if the evidence shows that the claimant could have existed without the contributions of the deceased employee. It depends upon whether the deceased employee had actually contributed to claimant's support and whether he relied upon such earnings in whole or in part for his livelihood. Dimas v. Albuquerque & Cerrilas Coal Co., 35 N.M. 591, 3 P.2d 1068; Barney Cockburn & Sons v. Lane, 45 N. M. 542, 119 P.2d 104; Sallee v. Calhoun, 46 N.M. 468, 131 P.2d 276. Its existence is a question of fact to be proved by the evidence. Merrill v. Penasco Lumber Co., 27 N.M. 632, 204 P. 72; Gonzales v. Chino Copper Co., 29 N.M. 228, 222 P. 903; Myers v. Pacific Greyhound Lines, 10 Cir., 134 F.2d 457, 460. The evidence submitted relating to the issue tended to establish this fact.

It is next contended that the trial court erred in refusing to give defendants' re-

quested instruction No. 6, which reads as follows:

"The mere fact that Billy Max Ferris may have at times permitted the plaintiffs to use part of his earnings for a family purpose, or that the plaintiff L. M. Ferris at times wrote checks upon the bank account held jointly in her name and that of her son is not sufficient to prove partial dependency. It must also be shown by preponderance of the evidence that the plaintiffs actually relied upon their son's earnings partially for their livelihood."

It is too well settled to need citation of authority that, if the court below fully and fairly declares the law applicable to the whole case, the court of last resort will not reverse for an alleged error in refusing another instruction asked on the trial, but not given. In this case the instructions given fully declare the law as applicable to the issues and evidence. The issue was that of dependency. In instructions two, three and four the jury was fully instructed as to the facts the appellees were required to show by a preponderance of the evidence in order to entitle them to recover under the provisions of the Workmen's Compensation Act. The court did not err in refusing the requested charge.

It is next contended that the court erred in giving its instruction No. 2, which reads as follows:

"With reference to the term 'dependent' as used in the Compensation Act, you are instructed that the Statutes of this State provide, in substance, that a parent is deemed a dependent under the Compensation Act, if actually dependent to any extent upon the deceased for support and livelihood at the time of his death.

"In determining the question of dependency, you may take into consideration any contribution, if any, shown in the evidence to have been made to the parents, to any extent relied thereupon to live in their station of life. It is not necessary to show that any particular part of the deceased's earnings were contributed to the parents. It is not necessary to show an absolute necessity of the parents therefor. It is sufficient to establish dependency that you find from a preponderance of the evidence that the deceased had contributed to the support and livelihood of his parents and that they relied thereupon, in whole or in part to any extent for their livelihood and support, at the time of his death."

Defendants argue that in the above instruction the words "to any extent" are erroneously used in that they do not appear

in Section 59–10–12(j) 4, supra, defining "dependents". The sole issue was whether or not the appellees were *partially* dependent upon the earnings of the deceased at the time of his death. We are of opinion, and so hold, that the interchange of the terms between the section defining dependents and Section 59–10–18(a) 7, supra, of the Act, providing for the amount of payments to be made, which uses the words "if dependent to *any extent*" for support, means the same thing. "Partially" used in Section 59–10–12(j) 4, supra, means "in part", not "wholly" and the words "to any extent" means partially not wholly. This is strengthened by the following language used in the latter section, to-wit: "Provided, that if such father and mother, or the survivor of them, shall be *totally* dependent upon such workman for support at the time of his death, he, she or they shall be entitled to * * *." In giving the questioned instruction the jury could not have been misled as to the issue of partial dependency.

It is finally contended that the court erred in submitting the following interrogatory to the jury.

"Based upon the foregoing instructions, you will answer the following interrogatory, 'yes' or 'no'. Question:

"Do you find the plaintiffs were actually partially dependent to any extent for their support or livelihood upon the deceased at the time of his death?"

The giving of special interrogatories is discretionary with the trial court, subject to review for abuse. American Insurance Co. v. Foutz and Bursum, 60 N.M. 351, 291 P.2d 1081. No abuse is shown in the case at bar. The question embraced in special interrogatory No. 2 concerns a simple question of fact necessarily involved in the general verdict. In view of the way the evidence was presented and the point stressed during the trial the jury fully understood the weight placed upon the question whether appellees were actually partially dependent to any extent for their support or livelihood upon the deceased at the time of his death pursuant to Section 59–10–18(a) 7 of 1953 Compilation. Claimants' attorneys will be allowed $500.00 for their services in this court.

The judgment will be affirmed.

It is so ordered.

SADLER, McGHEE, COMPTON, and KIKER, JJ., concur.